UNITED STATES of America,
Appellee,

v.

Tyrone Rogers YOUNG, Appellant.

UNITED STATES of America,
Appellee,

v.

Wayne HUDSON, Appellant.

Nos. 74–1327, 74–1658.

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 7, 1975.

Decided March 17, 1975.

JeRoyd X. Greene, Richmond, Va. [Court-appointed counsel], (Greene & Poindexter, Inc., Richmond, Va., on brief), for appellant in No. 74–1327.

Thomas R. Dyson, Jr., Alexandria, Va. [Court-appointed counsel], for appellant in No. 74–1658.

David H. Hopkins, U. S. Atty. (Leslie H. Rowe, Special Asst. U. S. Atty., on brief in No. 74–1658), for appellee in Nos. 74–1327 and 74–1658.

Before CRAVEN, FIELD and WIDENER, Circuit Judges.

CRAVEN, Circuit Judge:

At approximately 11:30 p. m. on July 16, 1973, George K. Bernstein was robbed at gunpoint and locked into the trunk of his automobile parked at the National Airport in Washington, D. C. As soon as the robbers left, Bernstein escaped by kicking out the rear seat of the car and immediately reported that he had been robbed by two and maybe three black males. Within minutes a roadblock at one of the exits of the airport netted three suspects in an automobile. The driver, Harris, related to the police that he was a Greyhound checker and had picked up his two passengers on the road near the scene of the crime, that he didn't know them, and that they offered him $10 to take them into Washington. These two persons were identified as Tyrone Young, who was then wanted for bank robbery, and Wayne Hudson, who was wanted for parole violation. The officers learned this information by radio after they had put the appellants in the police car and were on the way to the police station for further interrogation. When they arrived at the police station Bernstein was there and immediately identified Young as one of the robbers and the one who held the gun on him, and so testified at the trial.

When stopped at the roadblock the appellants explained their nighttime presence at the National Airport by saying that they were there looking for work. Subsequently, officers found Bernstein's briefcase and his wallet and a pistol close to where the appellants had been picked up in the car by Mr. Harris. Fingerprints of Young were also discovered on a document in Bernstein's wallet.

## I.

When the appellants were arrested at the roadblock the officers knew: (1) that an armed robbery had been committed moments before; (2) that the appellants were black males and within the vague description given by Bernstein; (3) that the culprits had fled the scene of the crime on foot and were apparently without motor vehicle transportation; (4) that appellants were without vehicular transportation, and instead of getting a cab at the terminal building had undertaken to hire a private car to carry them into Washington; (5) that appel-

lants had been picked up by the driver close to the scene of the crime; (6) that appellants' story of being at the airport without means of transportation and seeking work at 11:00 p. m. at night sounded unlikely. We hold the totality of the circumstances, including especially the brief time span from robbery to arrest, and proximity to the scene of the crime, constituted probable cause for arrest.

■ But if we assume otherwise, it should be noted that there were no "fruits" of the arrest other than Bernstein's positive identification of Young at the police station. We think the connection is insufficiently proximate. At most there is a "but for" connection. It is purely happenstance that Bernstein was taken to the police station rather than to the roadblock where he could have identified Young prior to arrest. Once the suspected culprits were known, Bernstein could just as well have viewed them as they left their homes the next day. There is no constitutional right not to be viewed. United States v. Quarles, 4 Cir., 387 F.2d 551 (1967). It is only when the arrest itself produces such pressure as to compel admissions or the production of contraband or the seizing of evidence that would not otherwise have been detected that the poisonous tree can be said to produce fruit. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). We hold that an unlawful arrest does not per se make inadmissible positive identification testimony that is otherwise competent. *See* Vance v. State of North Carolina, 4 Cir., 432 F.2d 984, 990 (1970). Whether such testimony is admissible does not depend upon the validity of the arrest but upon whether the confrontation was "so unnecessarily suggestive and conducive to irreparable mistaken identification that [appellants were] denied due process of law," Stovall v. Denno, 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199

(1967). That question is not presented to us—possibly because Bernstein did not identify Hudson, who was established by other evidence to be equally guilty.

II.

■ Appellant Young insists that the facts cannot sustain his conviction of violating 18 U.S.C. § 1201, entitled "kidnapping". We agree that at common law "kidnap" meant to take and carry a person by force and against his will. But the title of the statute is not determinative, and it is clear that Congress has made unlawful much more than strict kidnapping as defined at common law. Indeed, the indictment does not charge common-law kidnapping. Instead, it charges that on or about July 16, 1973, at Washington National Airport, the appellants "did unlawfully seize and hold the person of George K. Bernstein for the purpose of assisting escape after commission of a felony." This is an accurate statement of what was proved at trial and comes within the prohibition of the statute.[1] Under § 1201 the "involuntariness of seizure and detention . . . is the very essence of the crime . . ., [and] the true elements of the offense are an unlawful seizure and holding . . .." Gawne v. United States, 409 F.2d 1399, 1403 (9th Cir. 1969), cert. denied, 397 U.S. 943, 90 S.Ct. 956, 25 L.Ed.2d 123 (1970). The 1972 amendment expanded the jurisdiction of the United States courts to include, in addition to cases involving interstate transportation of the victim, cases of seizing and holding any person within the special maritime and territorial jurisdiction of the United States. We hold the evidence amply supports the indictment, which is well within the prohibitions of the statute. 18 U.S.C. § 1201.

The other assignments of error lack sufficient merit to require discussion.

Affirmed.

---

1. 18 U.S.C. § 1201 (Supp.1975), in pertinent part, provides:

    (a) Whoever unlawfully seizes . . . and holds for ransom or reward or otherwise any person . . . when:

    (2) any such act against the person is done within the special maritime and territorial jurisdiction of the United States;