**James E. PYNES, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 8111.**

District of Columbia Court of Appeals.

Argued Nov. 30, 1976.

Decided April 26, 1978.

Rehearing and Rehearing en Banc
Denied June 27, 1978.

Thomas A. Guidoboni, Public Defender Service, Washington, D. C., for appellant.

D. Michael Stroud, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry, and William D. Pease, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee. John O'B. Clarke, Jr., Asst. U. S. Atty., Washington, D. C., entered an appearance for appellee.

Before NEWMAN, Chief Judge, and NEBEKER and HARRIS, Associate Judges.

NEBEKER, Associate Judge:

Appellant was convicted of premeditated first-degree murder, D.C.Code 1973, § 22–2401; felony murder, id.; and armed kidnapping, D.C.Code 1973, §§ 22–2101, –3202. He was sentenced to concurrent terms for the murder counts and a consecutive term for the kidnapping offense. On appeal, he cites as error (1) the imposition of a consecutive sentence on the kidnapping charge; (2) the lack of a jury instruction that the testimony of an informant should be received with suspicion; and (3) the lack of a jury instruction as to the credibility of police officers as witnesses. We conclude that the facts of this case mandate neither the jury instructions requested nor the merger of the kidnapping charge with the felony murder count. Accordingly, we affirm.

On July 22, 1972, the decedent in this case was robbed. Appellant and Gregory Neal were indicted in Maryland for that offense. Subsequent to their indictment, appellant and Neal met the victim at his place of employment. They persuaded the victim to get into their car by pretending to want to talk him out of giving testimony against them in the robbery case. The victim could not be dissuaded and was unwillingly driven to Rock Creek Park. After a brief struggle in a parking area, he was killed by appellant. The circumstances of this killing were elicited from Raymond Monroe to whom appellant had confessed while both were inmates at the Montgomery County Detention Center in 1972. Monroe gave this testimony in exchange for the government's assistance with then-pending Maryland charges against him.

■ Appellant's first contention is that the victim was taken to the parking area for purposes of the killing and, therefore, the kidnapping should be viewed as an integral part of the murder and not as an independent offense. Attempting to view this series of events as one transaction, appellant urges that the felony murder included every essential element of the kidnapping, and, therefore, the two offenses merged under the test enunciated in *Blockburger v. United States,* 284 U.S. 299, 304, 52 S.Ct. 180, 76 L.Ed. 306 (1932):

[W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact that the other does not. . . .

*Blockburger* involved violations of the Harrison Narcotic Act, ch. 1, §§ 1, 2, 38 Stat. 785 (1914), as amended by ch. 18, § 1006, 40 Stat. 1057, 1131 (1919). Section 1 proscribes the selling of any of a number of forbidden drugs except in or from the original stamped package. Section 2 proscribes the selling of any of such drugs not in pursuance of a written order of the person to whom the drug is sold. Thus, upon the face of the statutes, two distinct offenses are created. In *Blockburger* one transaction violated both sections of the Act and the question was whether the accused committed two offenses or only one by the one sale. Because the court found that each offense required proof of a different element, the court precluded merger of the offenses.

The instant case is distinct from the situation in *Blockburger* in that it does not involve a single transaction resulting in two crimes, but a series of interrelated acts resulting in two crimes which are defined by separate statutes that are not *in pari materia.* Thus, we must look beyond the *Blockburger* test to determine whether the offenses merged for it is clear that the test there enunciated did not contemplate its application to a felony murder statute where proof of the felony substitutes for premeditation and deliberation by legislative fiat.

Even if we view the series of events as a continuous transaction, the doctrine of merger is inapplicable because the transaction offended multiple societal interests and constituted separate offenses. *See Williams v. Oklahoma,* 358 U.S. 576, 79 S.Ct. 421, 3 L.Ed.2d 516 (1959); *Gore v. United States,* 357 U.S. 386, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1958). It is settled that the "'heart' of the crime' of kidnapping is a

seizure and detention against the will of the victim," *United States v. Wolford,* 144 U.S. App.D.C. 1, 8, 444 F.2d 876, 883 (1971), whereas the heart of the crime of felony murder is a death during the course of certain specified offenses. The kidnapping statute is applicable to kidnappings perpetrated for a broad range of purposes or motives—lust, desire for companionship, revenge, or some other motive which does not involve ransom or reward such as silencing a witness. *See United States v. Wolford, supra* at 8, 444 F.2d at 883. The legislative purpose is additional punishment for and an additional deterrent against the act of kidnapping an intended murder victim to facilitate the murder and the escape of the perpetrators.

Moreover, the separate nature of the offenses is apparent in that appellant's "course of conduct admitted of interruption and alteration in response to the deterrent influence of additional punishment," a characteristic found pivotal in *Irby v. United States,* 129 U.S.App.D.C. 17, 20 n.4, 390 F.2d 432, 435 n.4 (1967), for upholding consecutive sentences for housebreaking and robbery. In the instant case appellant and Neal committed kidnapping when they drove the victim away from his place of employment against his will. Having committed kidnapping and violated appurtenant societal interests, it was still possible for appellant and Neal to abandon their plan by releasing the victim unharmed. But they continued to the parking area and committed the second, distinct offense of murder. The fact of the killing did not negate the earlier, act of kidnapping. *See also Blango v. United States,* D.C.App., 373 A.2d 885 (1977).

The situation in the present case is not unlike that in *Wolford, supra,* in which a helper on a hijacked truck was detained and transported against his will to Rock Creek Park, which was several miles from where the truck was hijacked. The court noted that the purpose of the detention was to facilitate the success of the hijacking and thus to secure a benefit to the hijackers. Accordingly, the court held that two separate and distinct crimes had been committed—armed robbery and kidnapping. So, too, in the instant case the removal of the victim to a secluded spot in a park facilitated the success of the killing and the escape of the perpetrators. Accordingly, appellant committed two separate and distinct crimes and was properly sentenced consecutively therefor.[1]

■ Appellant's next claim of error is the exclusion from the jury instructions that the testimony of an informant "should be received with suspicion." The court gave all but the bracketed portion of the following instruction:

An informer's testimony should be examined by you with greater care than the testimony of an ordinary witness. You should scrutinize it closely to determine whether it is colored in such a way as to place guilt upon the defendant in order to further the witness' own interest. You should [receive such testimony with suspicion and] act upon such testimony with caution.

Although appellant concedes that the language of an instruction concerning the testimony by an informant may vary according to the facts and circumstances of the particular case, he contends that, on the facts of this case, the denial of the requested language was prejudicial error. The sole government witness who linked appellant to the crime was Raymond Monroe. Monroe's testimony consisted primarily of admissions made to him by appellant respecting the crimes in question. At the time Monroe heard appellant's admissions and relayed them to police officers, Monroe himself was in custody facing charges. His apparent motive in testifying, therefore, was to gain prosecutorial leniency. Appellant asserts that where such self-interest motivates an informant, the full instruction is mandated.

---

1. This rationale does not of necessity lead to the conclusion that an accidental or nonpurposeful killing connected with a kidnapping could not be punished consecutively. We simply do not decide that question here.

The basis for the bracketed-language request is *Fletcher v. United States,* 81 U.S. App.D.C. 306, 158 F.2d 321 (1946), a narcotics case which involved the testimony of a paid informant who was a drug addict and in which there was a specific request for a jury instruction as to such testimony. Regarding an informant's testimony, the court in *Fletcher* stated:

No other motive than his own advantage impelled him in all that he did. And when to this is added the well recognized fact that a drug addict is inherently a perjurer where his own interests are concerned, it is manifest *either* that some corroboration of his testimony should be required, or at least that it should be received with suspicion and acted upon with caution. [*Id.* at 307, 158 F.2d at 322; emphasis supplied.]

In *Cratty v. United States,* 82 U.S.App.D.C. 236, 163 F.2d 844 (1947), the court refused to find error in the failure to give a *Fletcher*-type instruction where there was ample material corroboration of the informant's version of events and in the absence of a specific request for such an instruction. *Cratty* involved a Bureau of Narcotics informant who had a record of convictions for white slavery and larceny. The court stated that "the trial court would be well advised to caution the jury" as to the dependability of the testimony of an informant. *Id.* at 242, 163 F.2d at 850.

Monroe's familiarity with certain details of the crime which were not generally available reveals that the source of his information was a person intimately connected with the commission of the offense. Monroe gave information as to the facts that the victim arrived at work early in the morning, that a struggle occurred between the victim and appellant's accomplice, and that the accomplice was wounded by the decedent. He also gave information as to the location of the wounds on the deceased's body, that an automatic weapon was used, its caliber, and that money was taken from the deceased's wallet which was then dropped on the ground. These details were corroborated in turn by other testimony. Moreover, Monroe's relationship with the government in the case was fully explored on cross-examination, a factor stressed in *Hoffa v. United States,* 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966).

The cautionary instruction tendered to the jury adequately covered the credibility issue by indicating the potential unreliability of the informant's testimony, notwithstanding the omission of the words "receive . . . with suspicion." Since the jury was properly apprised that the testimony should be closely studied and weighed, and the testimony was corroborated in certain material aspects, the appellant was in no way prejudiced by the omission.

■ Nor do we find merit in appellant's contention that the omission by the trial court of the following instruction amounted to prejudicial error:

A police officer's testimony should be considered by you just as any other evidence in the case and in evaluating his credibility you should use the same guidelines which you apply to the testimony of any witness. In no event should you give greater or lesser credence to the testimony of any witness merely because he is a police officer.

Appellant focuses on the fact that, aside from Monroe's testimony, the government's case consisted of circumstantial evidence related to the jury largely through the testimony of police officers. The officers' testimony supplied much of the detail which tended to corroborate Monroe's testimony about the admissions appellant made to him. According to appellant, such primary reliance on police officer testimony mandates the requested instruction. We note that appellant has cited no case which requires that such an instruction be given. A similar instruction was deemed to be a fair one in *Bush v. United States,* 126 U.S.App. D.C. 174, 375 F.2d 602 (1967), a case which involved the testimony of an undercover officer on illicit drug transactions. However, *Bush* conveyed no absolute right to such an instruction in cases where police officers testify. Since police testimony in criminal cases can range in importance

from being the only prosecution evidence to being corroborative or merely incidental, we think the giving of this instruction should be entrusted to trial court discretions. Such judgment should take into account that the usual instructions on credibility and reasonable doubt are given and that some care should be taken that the jury not get the impression the court favors one verdict or another.

Accordingly, our scope of review is limited. We find in this case no abuse of discretion in refusing the requested charges. The convictions of appellant are

*Affirmed.*