Edwina SINCLAIR, a/k/a Barbara Johnson, Appellant,

v.

UNITED STATES, Appellee.

No. 9761.

District of Columbia Court of Appeals.

Argued Nov. 10, 1976.

Decided June 2, 1978.

As Amended June 8, 1978.

Rehearing and Rehearing en Banc Denied Aug. 1, 1978.

Jeffrey S. Berlin, Washington, D. C., appointed by this court, for appellant.

Douglas J. Behr, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry and Eugene M. Propper, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before HARRIS and MACK, Associate Judges, and REILLY, Chief Judge, Retired.

REILLY, Chief Judge, Retired:

This is an appeal by a young woman from a conviction of kidnapping and armed rob-

bery.[1] She was sentenced to concurrent terms of 8 to 25 years' imprisonment after being tried jointly with three other defendants. One of them, Flunnoy H. Brazwell, pleaded guilty to robbery after testifying. The other two, John E. McNeil and Ronald M. Williams, were found guilty by the jury of kidnapping while armed and armed robbery. Neither appealed.

At the trial, the principal government witness against the defendants was a journeyman housepainter, Calvin Poteat. One summer evening, Poteat, having received his weekly pay put $200.00 in his pockets and took a bus to the 1300 block of Corcoran Street, where—as he had expected—a sidewalk dice game was in progress. He joined some 15 or 20 players gathered in a circle. About 11:30 o'clock—some six hours later—he decided to quit while he was ahead, having won more than $50.00 and a watch from the other gamblers. He then invited appellant, whom he had noticed at the game, to have a beer with him. She told him to "wait a minute," departed, and returned within five minutes to the curb, driving a car with Virginia license plates. He joined her in the front seat, but before the car entered the 13th Street intersection at the end of the block, three men (the codefendants) climbed into it as it halted before a stop sign.

One (later identified as McNeil, the owner of the car) forced himself into the front seat, pushed a pistol into complainant's side, and told appellant, who was still at the steering wheel, to turn right on 13th and left on the next street. While she was driving, one of the men in the back seat went through Poteat's pockets as the gun was held on him, seized his cash, the watch he had won in the game, two rings, his own watch, and then forced him to remove his shoes. About six blocks from the place where the trio entered the car, the vehicle stopped again. Appellant was told to change places with one of the men in the rear seat, Brazwell. The latter proceeded to drive approximately 10 more blocks to an alley near 5th and U Streets, where Poteat

was put out of the car and admonished to run. One of the men emphasized this warning by firing a shot as the victim took off.

Although barefooted, Poteat eventually walked over to 9th and U Streets, where he encountered four policemen, and reported what had happened to him. While he was talking, the automobile in which he had been a passenger passed by. The officers pursued it in two separate scout cars to the corner of 13th and U Streets, where they were able to flag it down. Appellant and her three codefendants were in the vehicle along with another woman. The occupants were removed from the car. As the police started to question the men, the two women attempted to walk away, but were detained. Appellant identified herself to one of the arresting officers as "Barbara Johnson" and it was not until she was taken to police headquarters for booking that she admitted that her real name was Edwina Sinclair. An examination of the car brought to light a handgun wedged into the back seat, where appellant had been sitting. A search of the four persons Poteat had identified as having been in the car with him uncovered sums of cash ranging from $43.00 to $25.00 on each. Brazwell's pockets also contained the stolen rings.

■ The foregoing description of the events of the evening is based on the evidence offered by the prosecution. When the government rested, appellant moved for acquittal, and now assigns as error the denial of this motion. We perceive no error in this ruling. Although Poteat's description of appellant's role in the events which culminated in the robbery reveals the possibility of her being an unwilling collaborator, her subsequent behavior (including her failure to volunteer any information to the policemen who stopped the car, the attempt to sneak away, and the giving of a false name) provided grounds from which a jury could infer beyond a reasonable doubt that she was at least an aider and abettor.

1. These offenses are defined, respectively, in D.C.Code 1973, §§ 22–2101, –2901, and –3202.

Appellant made a similar motion when all the evidence was in and both sides had rested. The court was plainly correct in rejecting this motion, for this time her guilt was clearly established if the jury credited the testimony of another codefendant, Brazwell. The latter, who ultimately pleaded guilty to robbery, which resulted in the severance of his case from the others, testified that appellant and he were intimate friends; she had come to the dice game with him in McNeil's car, that after she had lost her money and watch in the game, she said she would like to get some of her money back, and that by prearrangement with McNeil she had later picked up his car and driven it, and that after the robbery, they had all driven downtown to buy liquor and narcotics with the proceeds. Soon thereafter, they asked the second woman to ride in the car. The other two defendants testified that Poteat was never in the car after they, Brazwell, and appellant left the scene of the dice game. Apparently the jury disbelieved them. Appellant did not take the stand.

 It appears that Brazwell had given similar testimony to the grand jury. In this court, appellant argues that the trial was fatally tainted by the failure of the government to provide her defense counsel with a transcript of Brazwell's testimony on that occasion, citing *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), which makes it the duty of the prosecution to supply a criminal defendant with any exculpatory information in its possession prior to trial. But far from being exculpatory, Brazwell's version of the affair before the grand jury—as well as at the trial—obviously incriminated the appellant. Hence

the government under the *Brady* doctrine had no obligation to furnish Brazwell's pretrial testimony to the defense.[2] We find nothing in the record to indicate that appellant had ever requested the grand jury minutes. Refusal to honor such a request has been deemed one of the "standards by which the prosecution's conduct . . . is to be measured." *Moore v. Illinois,* 408 U.S. 786, 794–95, 92 S.Ct. 2562, 2568, 33 L.Ed.2d 706 (1972).

A more serious issue is raised by appellant's contention that the record does not support the conviction and concurrent sentence under the kidnapping count, predicated upon a violation of D.C.Code 1973, § 22–2101, which provides, in part:

> Whoever shall be guilty of, or of aiding or abetting in, seizing, confining, inveigling, enticing, decoying, kidnaping, abducting, concealing, or carrying away any individual by any means whatsoever, and holding or detaining, or with the intent to hold or detain, such individual for ransom or reward or otherwise . . . shall, upon conviction thereof, be punished by imprisonment for life or for such term as the court in its discretion may determine.
>
> . . .

There was ample evidence from which the jury could decide that the defendants were guilty of "inveigling" or "enticing"[3] the victim to enter the automobile; of "confining" and "carrying away" the complaining witness in such vehicle, both before and after they succeeded in robbing him; and of "holding" or "detaining" him.

Appellant argues, however, that this section of the Code should not be accorded its literal meaning, relying upon a doctrine de-

**2.** In *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), the Supreme Court articulated the following standard for the courts:

> The proper standard of materiality must reflect our overriding concern with the justice of the finding of guilt. Such a finding is permissible only if supported by evidence establishing guilt beyond a reasonable doubt. It necessarily follows that if the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed. This means that the omission

must be evaluated in the context of the entire record. If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial. On the other hand, if the verdict is already of questionable validity, additional evidence of relatively minor importance might be sufficient to create a reasonable doubt. [427 U.S. at 112–13, 96 S.Ct. at 2401. (footnotes omitted).]

**3.** The terms are virtually synonymous.

**1204**

veloped by the New York Court of Appeals in *People v. Levy*, 15 N.Y.2d 159, 256 N.Y. S.2d 793, 204 N.E.2d 842 (1965)—a 4–3 opinion overruling a prior decision to the contrary in that jurisdiction.[4] In *Levy*, the majority held that a state statute which defined the offense of kidnapping so broadly as to embrace "in its terms any restraint," should not be construed to sustain convictions for kidnapping where the restraint or detention was only incidental to the commission of such crimes as robbery, rape or assault.

According to this opinion,
[t]his definition could literally overrun several other crimes, notably robbery and rape, and in some circumstances assault, since detention and sometimes confinement, against the will of the victim, frequently accompany these crimes. Some of the definitions could apply alike to kidnapping and abduction. It is common occurrence in robbery, for example, that the victim be confined briefly at gunpoint or bound and detained, or moved into and left in another room or place.

It is unlikely that these restraints, sometimes accompanied by asportation, which are incidents to other crimes and have long been treated as integral parts of other crimes, were intended by the Legislature in framing its broad definition of kidnapping to constitute a separate crime of kidnapping, even though kidnapping might sometimes be spelled out literally from the statutory words. [*Id.*, 15 N.Y.2d at 164, 256 N.Y.S.2d at 797, 204 N.E.2d at 844.]

■ Had the majority opinion contented itself with the observation that legislative bodies in enacting statutes which define the offense of kidnapping—like the applicable provision of our Code—as covering such conduct as "confining," "detaining," or "holding," did not intend that every conviction for rape or robbery should also carry with it a separate conviction for kidnapping, we could accept this thesis. Obviously, the victims of such felonies are detained against their will while the criminal is accomplishing his objective. Thus, the detention or confinement, if approximately coextensive in time and place with the crime itself, is an integral element of the crime, and like an "attempt" or a "necessarily included lesser offense" may be viewed as merging with the principal offense in contradistinction to constituting a separate crime.

■ Unfortunately, the discussion of the merger aspect of statutory construction in the quoted portion of the *Levy* opinion is clouded by its curious reference to "asportation" and its seeming premise that "incidents to other crimes" are "integral parts" of such crimes. The word "asportation"[5] —literally the act of carrying away—is normally used to describe the felonious taking of goods from their rightful possessor and hence is a necessary element of a robbery or a larceny.[6] *See* D.C.Code 1973, §§ 22–2201, –2202, –2901, –2902. But when the term "asportation" is used in the odd sense of carrying away a human being, the doctrine of merger does not come into play, for such action is not an essential element of such crimes as robbery, rape or assault.

If all that the *Levy* opinion meant to say was that if the perpetrator of a holdup or a rape compels his victim to step back a few paces from a public sidewalk or a particular room in a house or a commercial establish-

4. The case overruled was *People v. Florio*, 301 N.Y. 46, 92 N.E.2d 881 (1950), where a girl was picked up by the driver of an automobile in Manhattan, forcibly detained, and driven to another borough, where she was raped. On the authority of the *Levy* opinion, the court, two years later in *People v. Lombardi*, 20 N.Y.2d 266, 282 N.Y.S.2d 519, 229 N.E.2d 206 (1967), reversed a kidnapping conviction of a man who on three separate occasions had drugged different women and driven them to a motel where he assaulted them sexually.

5. The statute under which appellant was convicted in the case before us does not use the word "asportation", but the broader term, "carrying away." *See* D.C.Code 1973, § 22–2101.

6. A holdup man who takes nothing from his victim is guilty of an assault, but not a robbery.

ment in order to enable him to complete his crime, we could agree that construing the term "carrying away" as applicable to such short and momentary removals would be an unduly expansive reading of a kidnapping statute.

Such considerations caused the Supreme Court of California, in reviewing sentences separately imposed for robbery, rape and kidnapping on such a set of facts, to reverse the conviction on the kidnapping count. Citing with approval the observations of the New York court in *Levy*, the California court in *People v. Daniels*, 71 Cal.2d 1119, 80 Cal.Rptr. 897, 459 P.2d 225 (1969), noted that "defendants here, in the course of robbing and raping three women in their own homes, forced them to move about their rooms for distances of 18 feet, 5 or 6 feet, and 30 feet respectively." [7] In this context, the court concluded that "the brief movements which defendants . . . compelled their victims to perform in furtherance of robbery were merely incidental to that crime and did not substantially increase the risk of harm otherwise present." [8] In declaring that the defendants' behavior was not kidnapping, the court overruled an earlier holding, *People v. Wein*, 50 Cal.2d 383, 326 P.2d 457 (1958), relying on the rule of construction that "[i]t is the fact, not the distance, of forcible removal which constitutes kidnapping . . . ." [9]

In contradistinction to the *de minimis* approach of the *Daniels* case, however, the New York Court of Appeals in *Levy* itself and in subsequent decisions, went far beyond any application of the merger doctrine by treating even substantial acts of confinement and forcible transportation as mere "incidents" of such crime as robbery or rape. In *Levy*, a married couple was stopped by two armed men just after parking their car on a city street. They were forced at gunpoint to remain in the vehicle. Then one of their assailants drove the car for about 20 minutes, covering some 27 city blocks, while the other robbed the victims of their jewelry and wallet. The court refused to sustain the conviction on the kidnapping charge on the ground that "[i]n the case before us the movement of the automobile, which was itself the situs of the robbery, was not essentially different in relation to the robbery than would be the tying up of a victim in a bank and his movement into another room. In essence the crime remained a robbery although some of the kidnapping statutory language might literally also apply to it." [10]

Burke, J., writing for the three dissenters, objected to this highly restrictive interpretation of the kidnapping statute:

The statute was designed to provide additional punishment for and thus reduce the usage of the professional criminal practice of detaining the victim of a crime in order to assure the safety of the flight of the criminal by preventing an outcry by the victim and the possibility of pursuit. This decision encourages such a practice. [11]

From this brief summary of *Levy*, it is apparent that the result reached by the majority cannot be supported by the doctrine of merger. Nor can it be said that the

7. *People v. Daniels, supra*, 80 Cal.Rptr. at 901, 459 P.2d at 229.

8. *Id.* at 910, 459 P.3d at 238.

9. *Id.* at 910, 459 P.2d at 238. This proposition was enunciated in an earlier capital case, *People v. Chessman*, 38 Cal.2d 166, 192, 238 P.2d 1001, 1017 (1951). In repudiating it, the court expressly refrained from overruling *Chessman* itself, which presented different facts (80 Cal. Rptr. at 910, 459 P.2d at 238, n. 14)—the victim there being forced to leave one car and enter another vehicle, where she was sexually assaulted.

In later cases, however, the California court did not adhere to the limitations of *Daniels*, but eventually (as the New York court did) disregarded such factors as time and distance, where the principal objective of the seizure and removal was the commission of some other crime. *See People v. Mutch*, 4 Cal.3d 389, 93 Cal.Rptr. 721, 482 P.2d 633 (1971) and *People v. Timmons*, 4 Cal.3d 411, 93 Cal.Rptr. 736, 482 P.2d 648 (1971).

10. *People v. Levy, supra*, 15 N.Y.2d at 165, 256 N.Y.S.2d at 796, 204 N.E.2d at 844.

11. *Id.* at 167, 256 N.Y.S.2d at 798, 204 N.E.2d at 845–46.

forcible removal of the victims for a distance of more than 20 blocks was obviously so minute or peripheral that the legislature could not have intended to make such conduct a separate crime.

As the United States Court of Appeals for the Second Circuit put it in a post-*Levy* decision, *United States v. Baker,* 419 F.2d 83, 89 (1969):

> [Appellant] also contends that, since his crime was essentially robbery, the kidnaping count merged with the other offenses and therefore cannot support a separate conviction. This argument has no support in any federal court decision nor in the language of the Federal Kidnaping Act, 18 U.S.C. 1201.[12]

Subsequently this same federal court, when the *Levy* opinion and its progeny were specifically drawn to its attention, remarked that "such a narrowing of the scope of the kidnapping statute is a legislative rather than a judicial function. . . ." *United States v. DeLaMotte,* 434 F.2d 289, 292 (2d Cir. 1970), *cert. denied,* 401 U.S. 921, 91 S.Ct. 910, 27 L.Ed.2d 825 (1971).

In disposing of a similar contention in an appeal for convictions of rape and kidnapping, the Court of Special Appeals in Maryland also recognized that the true test of merger depends upon whether the facts necessary to prove the commission of one crime are essential ingredients of another. Accordingly in *Rice v. State,* 9 Md.App. 552, 267 A.2d 261, 269 (1970), the court said:

> In the instant case the victim was dragged from her apartment and carried several blocks into the accused's apartment. These actions completed the crime of kidnapping. Thereafter, the crime of rape occurred; the kidnapping was in no way an essential element of that crime because that crime could just as easily have occurred at the victim's apartment. It is not necessary for the State to prove the rape to establish the kidnapping nor

to prove the kidnapping to establish the rape. The decision that the kidnapping and rape did not merge is based on only the facts of the instant case.

The Delaware courts have also disagreed with the *Levy* rule. *Long v. State,* 332 A.2d 146–47 (Del.1975). In *Moore v. State,* 23 Md.App. 540, 329 A.2d 48, 53 (1974), the Maryland Court of Special Appeals, in expressly repudiating the New York rule, pointed out that it had previously found that rule in conflict with "a majority of the courts, 17 A.L.R.2d 1003." According to the government's brief in our case, California is the only jurisdiction which has followed the *Levy* doctrine.

But wholly irrespective of what the weight of authority among the state courts may be, it is obvious that such decisions, not being directed at the precise wording of the section of the District Code which we are called upon to interpret, are of somewhat dubious relevance. As we have previously noted, this section of the Code was amended to bring it into conformity with the corresponding federal act defining kidnapping. Consequently, decisions of United States courts on the issue raised in the case before us provide more authoritative guidelines.

The United States Court of Appeals for the Second Circuit is not the only federal tribunal which has rejected the *Levy* rule of construction. The federal courts vested with appellate jurisdiction in our metropolitan area have also declined to follow the New York rule. In sustaining a conviction for kidnapping as well as robbery—in a case where a truck driver, whose vehicle had been seized at pistol point, was then taken to upper Rock Creek Park, while the robbers made their getaway—the court, after analyzing the New York and California decisions upon which appellant here relies, observed:

> lower Manhattan to surrender the wheel, to turn over the operation of the truck to him, and had kept the driver aboard until the truck had been driven through the Holland Tunnel into Jersey City.

**12.** As a result of a 1965 Congressional amendment, the kidnapping provisions of the D.C. Code conform in relevant respect to this section. In *Baker,* the challenged conviction for kidnapping was based on evidence that an armed hijacker had forced the driver of a truck in

[F]orcible detention . . . both in time and place went far beyond the momentary detention necessarily associated with every robbery . . . . [*United States v. Wolford,* 144 U.S.App.D.C. 1, 8, 444 F.2d 876, 883 (1971).]

And in another local case, where the victim of a robbery at Washington National Airport was not carried away, but was forcibly detained after the robbery was accomplished, the Court of Appeals for the Fourth Circuit also held that the kidnapping statute was violated. *United States v. Young,* 512 F.2d 321 (4th Cir. 1975). There, the victim, after being compelled by armed robbers to give up his wallet, was locked by them into the trunk of his parked car.

In the case now before us, the evidence shows that even though determined to seize the winnings of the complaining witness and the cash he had displayed, the potential robbers would have run considerable risk had they drawn a gun on him while he was still on Corcoran Street in the midst of friends and acquaintances, who might well have called the police if they had seen a felonious offense in progress. By inveigling him into an automobile, holding him at gunpoint, and driving about 25 blocks before dropping him off, they exposed him to much greater danger than would have been the case had the robbery occurred while he was walking around in the neighborhood. Conversely, appellant and her confederates ran much less risk of detection by smuggling him away from the scene and deferring the accomplishment of their objective until they were unseen by anyone except the occupants of the car—all of whom were participating in the scheme.

The salient facts in *United States v. Wolford, supra,* differ from the evidence here only in that the victim of that robbery was confined for 45 rather than 10 minutes in the vehicle which had been seized, and was transported a few miles rather than some

25 blocks before being released. We do not perceive these differences in time and distance as distinguishing factors.[13]

In a very recent case, *Pynes v. United States,* D.C.App., 385 A.2d 772 (1978), we affirmed convictions for murder, felony murder, and kidnapping (including the imposition of a consecutive sentence on the last count), after rejecting the contention that because the victim was driven against his will to a secluded area for purposes of the killing, the kidnapping should be viewed as an integral part of the murder and not as an independent offense. After pointing out that all the elements of the offense of kidnapping had been completed before the homicidal fray began, we also referred to *United States v. Wolford, supra,* observing:

The situation in the present case is not unlike that in *Wolford, supra,* in which a helper on a hijacked truck was detained and transported against his will to Rock Creek Park, which was several miles from where the truck was hijacked. The court noted that the purpose of the detention was to facilitate the success of the hijacking and thus to secure a benefit to the hijackers. Accordingly, the court held that two separate and distinct crimes had been committed—armed robbery and kidnapping. So, too, in the instant case the removal of the victim to a secluded spot in a park facilitated the success of the killing and the escape of the perpetrators. Accordingly, appellant committed two separate and distinct crimes and was properly sentenced consecutively therefor. [*Pynes v. United States, supra,* at 774; footnote omitted.]

In the case at bar, the reasoning of *Wolford* and *Pynes* compels a similar conclusion. Plainly, the forcible detention and carrying away of the complaining witness in this case, which began before and continued after the victim was forced to yield his

---

**13.** Neither the movement of the car in which the complaining witness was a captive nor the time involved can be viewed insubstantial. The court has held that the search of an automobile which occurred after a trip of even shorter length and duration (a police officer had moved the car after the driver was arrested) was not a search incident to arrest, because it was not undertaken contemporaneously. *Arrington v. United States,* D.C.App., 382 A.2d 14 (1978).

money and other valuables, cannot be deemed a detention approximately coextensive or a necessary incident to the crime of robbery. Hence, the conviction here for the separate offense of kidnapping was within the intent as well as the text of the applicable section of the Code.

*Affirmed.*

MACK, Associate Judge, dissenting:

Implicit in the reasoning of the majority decision is the obvious conclusion that the facts of each case must be examined in the determination of whether kidnapping merges with another crime. *See Robinson v. United States*, D.C.App., 388 A.2d 1210 (No. 11036, decided this date). I accept the standards which the majority adopts in analyzing the facts—*i. e.,* whether the involuntary detention (which is the essence of the kidnapping)[1] is coextensive in time and place with the principal offense, and whether it exposed the victim to much greater danger than would have been the case otherwise. These standards are not significantly different from the *"Levy-Lombardi"* standards adopted by the New York and California courts[2]—*i. e.,* whether the movement (detention) was "merely incidental" to the other crime "and did not substantially increase the risk of harm otherwise present." *See e. g., People v. Daniels*, 71 Cal.2d 1119, 80 Cal.Rptr. 897, 910, 459 P.2d 225, 238 (1969). I might add that these *Levy-Lombardi* standards are alluded to, without disapproval, by the federal appellate court in this jurisdiction. Thus that court, in affirming separate convictions for kidnapping and robbery, speaks of detention going "both in time and place . . . far beyond the momentary detention necessarily associated with every robbery" and "substantially increas[ing] the risk of harm over and above that necessarily incident to the . . . robbery." *United States v.*

*Wolford,* 144 U.S.App.D.C. 1, 8, 444 F.2d 876, 883 (1971).

Since the facts of the instant case are virtually indistinguishable from *Levy* (and indeed present an easier case for merger) it is apparent why the majority, in reaching its result, elects to follow the charade of rejecting the *Levy* "rule of construction." In doing so, I believe it has employed reasoning fatal to its own analysis. Focusing on one word appearing in the *Levy* opinion, the majority reasons that the term "asportation" is used in the odd sense of carrying away a human being and that therefore the doctrine of merger does not come into play. This is so, says the majority because "such action is not an *essential element* of such crimes as robbery, rape or assault." (Emphasis added.) The latter statement is undeniably true since the carrying away of a person is not an essential element of any crime (including kidnapping) except with respect to statutes promulgated to prevent traffic across boundaries. I would add that neither is detention of a person an essential element of the crimes of robbery, rape or assault. Following the reasoning of the majority to its logical conclusion, the merger standards (of coextensiveness and risk of greater danger) which it today adopts, become virtually meaningless.

It is clear that the *Levy* opinion employs the word "asportation" to describe any movement which is a "sometimes accompany[ing]" feature of a crime which, with other restraints, has been treated as an integral part of the crime. Specifically it is describing the movement of a vehicle which is only incidental to the commission of the crime, or to put it another way, a moving vehicle which is merely the *situs* of the crime. *See People v. Levy*, 15 N.Y.2d 159, 164, 256 N.Y.S.2d 793, 796, 204 N.E.2d 842, 844, *cert. denied,* 381 U.S. 938, 85 S.Ct. 1770, 14 L.Ed.2d 701 (1965).[3]

1. *United States v. Young,* 512 F.2d 321 (4th Cir. 1975).

2. *People v. Levy,* 15 N.Y.2d 159, 256 N.Y.S.2d 793, 204 N.E.2d 842, *cert. denied,* 381 U.S. 938, 85 S.Ct. 1770, 14 L.Ed.2d 701 (1965); *People v.*

*Lombardi,* 20 N.Y.2d 266, 282 N.Y.S.2d 519, 229 N.E.2d 206 (1967).

3. The *Levy* opinion recites as follows:
It is unlikely that these restraints, sometimes accompanied by asportation, which are

This is the precise factual situation which we have in the instant case. The victim, who had invited the appellant to share a beer at a bar, entered the vehicle of his own volition. The actual robbery commenced seconds later when appellant's alleged accomplices entered the automobile with a gun.[4] Appellant was instructed to continue driving. The whole episode consumed from 5 to 10 minutes. In the context of time and place it is difficult to imagine a more compressed factual situation. The car which the victim entered willingly was the situs of the crime. The fact of the automobile's movement thereafter did not appear to restrict the victim's freedom of movement beyond that incidental to the robbery. I agree, of course, that if this record can be read as showing either that the victim was exposed to greater danger because of the automobile movement or that such movement was planned to facilitate the robbery, the kidnapping count would support a separate conviction. However it seems to me that the facts support other inferences than those drawn by the majority. The victim testified that he did not know the people with whom he had been playing "crap." He had been winning. He sought the companionship of appellant. The fact that the game was taking place out-of-doors for four or five hours under a street light says something about the probability of police surveillance in that particular block as well as the probability that people on the scene would summon the police. Indeed, as it developed the victim found the police four blocks from where he was put out of the car after the robbery. The circumstances provide a slim reed upon which to conclude that the victim was lured away from friends to face greater danger.

Finally, I mention again the obvious: that every robbery involves a temporary restriction of freedom of movement. The question of whether this restriction encroaches upon the interest protected by the kidnapping statute is one of fact. Time, place and purpose become essential factors. For this reason, in my opinion, the federal decisions do not provide the degree of support for the majority's conclusion that it implies. It is true that the Second Circuit has refused to adopt a theory of merger, even when the *Levy* rationale was pressed upon it. That refusal, however, surfaced in the context of factual circumstances where victim truckdrivers were subjected to extended and planned detentions to enable highjackers to transport interstate commerce and conceal cargo. *See United States v. DeLaMotte*, 434 F.2d 289 (2d Cir. 1970), *cert. denied*, 401 U.S. 921, 91 S.Ct. 910, 27 L.Ed.2d 825 (1971). *See also United States v. Baker*, 419 F.2d 83 (2d Cir. 1969). In this jurisdiction, the federal court found factual circumstances to come within the literal language of our kidnapping statute where a victim trucker was seized and carried to Rock Creek Park at gun point for close to an hour to facilitate the hijacking of his liquor-laden truck some 3.8 miles away. *See United States v. Wolford, supra.* As noted above it distinguished these facts from the *Levy-Lombardi* cases and did not specifically disapprove those cases.[5] *See also Pynes v. United States*, D.C.App., 385 A.2d 772 (1978).

None of these federal decisions deal with a unitary factual situation where a moving automobile is the situs of a principal offense. A kidnapping conviction for a rob-

---

incidents to other crimes and have long been treated as integral parts of other crimes, were intended by the Legislature in framing its broad definition of kidnapping to constitute a separate crime of kidnapping, even though kidnapping might sometimes be spelled out literally from the statutory words.

\* \* \* \* \* \*

In the case before us the movement of the automobile, which was itself the *situs* of the robbery, *was not essentially different* in relation to the robbery than would be the tying up of a victim in a bank and his movement into another room. In essence the crime remained a robbery although some of the kidnapping statutory language might literally also apply to it. [Emphasis added.]

4. Although the victim spoke of a shot being fired as he left the automobile, the gun which the government recovered was a blank one incapable of being fired.

5. *See also United States v. Young, supra* where after a robbery the victim was locked in the trunk of his parked car.

bery committed in a parked automobile during a five-to-ten minute period could hardly be sustained against challenge. Unless the movement of the automobile has special significance, the same result should obtain. I would reverse the conviction for kidnapping and dismiss the charge.