**UNITED STATES of America**

v.

**Charles McGILL, Appellant.**

**No. 73–1028.**

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 25, 1973.

Decided Nov. 9, 1973.

Rehearing Denied Dec. 4, 1973.

Stewart L. Pittman, Washington, D. C. (appointed by this court), for appellant.

Steven R. Schaars, Asst. U. S. Atty., with whom Harold H. Titus, Jr., U. S. Atty., John A. Terry and John E. Drury III, Asst. U. S. Attys., were on the brief for appellee.

Before TAMM, MacKINNON and ROBB, Circuit Judges.

PER CURIAM:

By a jury verdict appellant was found guilty of armed robbery [1] and of assault with a dangerous weapon.[2] The court adjudged concurrent sentences of imprisonment of five to fifteen years on the armed robbery conviction and of three to ten years on the conviction of assault with a dangerous weapon. We vacate the judgment entered on the armed robbery conviction and affirm the judgment on the charge of assault with a dangerous weapon.

The statute of the District of Columbia which defines the crime of robbery and fixes the authorized punishment for its violation provides:

§ 22–2901. Robbery.

Whoever by force or violence, whether against resistance or by sudden or stealthy seizure or snatching, or by putting in fear, shall take from the person or immediate actual possession of another anything of value, is guilty of robbery, and any person convicted thereof shall suffer imprisonment for not less than two years nor more than fifteen years.

D.C.Code § 22–2901 (Supp. V 1972). An additional statute defines "robbery," "larceny" and "assault with intent to . . . commit . . . robbery" as "crime[s] of violence" and provides additional authorized punishment for violations thereof when any such offense is committed by a person "when armed with or having readily available any pistol or other firearm, etc. . . . ." D. C.Code §§ 22–3201, 3202.

Appellant in the instant case was charged under these statutes with the crime of armed robbery in an indictment which alleged:

On or about December 21, 1971, within the District of Columbia, CHARLES McGILL, while armed with a dangerous weapon, that is, a

---

1. D.C.Code §§ 22–2901, 3202.

2. *Id.* § 22–502.

pistol, by force and violence and against resistance and by putting in fear, stole and took from the person and from the immediate actual possession of William Arrington, property of William Arrington, of the value of about $231.00, consisting of $216.00 in money, one wallet of the value of about $15.00, and keys.

 It is elementary under such an indictment for robbery that the Government must prove "[a]ssault and larceny."[3] It has been said:

> In the absence of statutory modification, the constituent elements of the offense of robbery are (1) a felonious taking, (2) accompanied by an asportation, of (3) personal property of value (4) from the person of another or in his presence, (5) against his will, (6) by violence or by putting him in fear, (7) animo furandi [the intention to steal].

2 Wharton, Criminal Law and Procedure § 545 (12th ed. 1957) (footnotes omitted). We see no statutory modification here that would alter these basic elements for the crime, but presently we are only concerned with the alleged failure of the Government to prove (1) the taking and (2) asportation of (3) property of value.

 When we consider the evidence in the light most favorable to the Government, as we must, we find that the evidence of record proves only that the victim had $231.00 in his pocket,[4] and was carrying four or five Christmas packages[5] when he was confronted by two men[6] who held a gun on him[7] and went through his pockets,[8] and he testified that he told a policeman a few minutes later "I just been robbed."[9] There is absolutely no evidence as to whether the robbers found the money in his upper pocket, and if they did, whether they stole it. The indictment charged a taking of money, a wallet and keys but the record is devoid of any evidence that any of these items were taken or carried away.[10] The Government would have us rely upon the circumstantial evidence that he had $231 in his (upper) pocket, and there was proof that the robbers went through his pockets,[11] and his subsequent statement to the policeman that he was "robbed";[12] but this proof falls

---

3. 2 Wharton, Criminal Law and Procedure § 545 (12th ed. 1957).

4. Tr. 11, 12.

5. *Id.* at 12.

6. *Id.* at 13.

7. *Id.* at 13–14, 26–28, 33.

8. *Id.* at 14.

9. *Id.* at 15.

10. The closest approach to this necessary element is the following testimony:

> And then one pulled a gun; one got behind me; and one pulled a gun and stood in front of me and put the gun between my legs; and stood up close to me and started going through my things; and told me if I move, they would kill me.
>
> Q Where if anywhere did his hands go about your body?
>
> A Well, the man behind went through my back pockets. The man in front went through my front pockets and my top pocket.
>
> * * * * *
>
> Q What finally happened after they had gone through your pockets?
>
> A They told me, if I would holler or anything—they run across the street and disappeared.
>
> Q Now, do you remember the type of gun that they had on you?
>
> A It looked like a Luger. It was down between my legs.

Tr. 13–14. Thus, there was no testimony that any money or anything was taken.

11. *Id.*

12. The victim testified further:

> I was running down the middle of the street and I saw Officer Rafferty in the car; and I approached him; and I was in the middle of 16th Street; and I stood in front of all the traffic, in the corner; I was really shaking then.
>
> Q What if anything did you do then?
>
> A I told him: I just been robbed. Excuse me. The fly of my pants was tore open and the buttons on the top of my coat was torn.
>
> They put me in the car and they drove me back to the scene of the crime.

Tr. 14–15. *See also* Tr. 22. On another occasion the victim testified obliquely to the

short of proving a definite taking and asportation of any specific items having any specific value. He could have been robbed of the Christmas presents, or other articles of value, which would have been a variance from the crime charged. In short, the Government's case was completely deficient of any evidence which would warrant a conclusion beyond a reasonable doubt that any property was stolen as the indictment alleged. These deficiencies in the evidence are fatal to a valid conviction. The Government's evidence is very strong on the holdup, the assault, the use of the gun, and putting the victim in fear, but it is completely deficient in the other necessary specific items of proof pointed out above.[13]

The opening statement of the prosecutor to the jury was very clear on what evidence the Government proposed to introduce. He stated, *inter alia:*

> Mr. Arrington pulled out his wallet and turned over the $151 that he had just received from his check, and the bonus. He turned it over and gave it to this man.

Supp. Tr. 5. But no such evidence was introduced at trial.

The closing argument of the prosecutor also referred to facts which were not in evidence:

> They took his money . . . And he had all his money taken from him
> . . . .

Supp. Tr. 10, 16. In other words, the Government's contention adds up to an assertion that an indictment charging a robbery of $231 is proved by evidence that the alleged victim had $231 in his pocket (and Christmas presents) and that he told a policeman: "I just been robbed." Clearly, more specific evidence is necessary.

This state of the record leaves us no recourse but to reverse the judgment on

the robbery count (first count) with the attendant prison sentence of five to fifteen years. However, we affirm the judgment on the third count, i. e., the charge of assault with a dangerous weapon.

Judgment accordingly.

---

robbery, stating: "After they robbed me, no, sir" (Tr. 33), but again this did not refer to any specific items or to anything for which a value could have been inferred.

13. *Cf.* Hunt v. United States, 115 U.S.App. D.C. 1, 4, 316 F.2d 652, 655 (1963).