John L. BECK, a/k/a John L. Beck, Jr., Appellant,

v.

UNITED STATES, Appellee.

No. 11208.

District of Columbia Court of Appeals.

Argued June 9, 1977.

Decided May 23, 1979.

---

David J. Lloyd, Washington, D. C., appointed by the court, for appellant.

Richard H. Saltsman, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Sil-·bert, U. S. Atty., John A. Terry and Martin J. Linski, Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before GALLAGHER and YEAGLEY, Associate Judges, and PENN, Associate Judge, Superior Court of the District of Columbia.*

PENN, Associate Judge:

The appellant was tried before a jury which found him guilty of armed kidnaping (D.C.Code 1973, §§ 22–2101, 22–3202), armed rape (D.C.Code 1973, §§ 22–2801, 22–3202), sodomy (D.C.Code 1973, § 22–3502) and armed robbery (D.C.Code 1973, §§ 22–2901, 22–3202). On July 27, 1976, he was sentenced to serve fifteen years to life each on the armed kidnaping and armed rape charges, those sentences to run concurrently, and to serve three to nine years for sodomy and five to fifteen years for armed robbery, those sentences to run consecutively. He seeks to have this court reverse his conviction and cites four grounds: Namely, (1) it was error for the trial court to refuse to enforce his subpoena of the complainant which failure prevented appellant from calling her as a witness at his preliminary

---

* Sitting by designation pursuant to D.C.Code 1973, § 11–707(a); now a judge of the United States District Court for the District of Columbia.

hearing, (2) there was insufficient evidence to convict him of armed robbery because no theft was shown, (3) the evidence produced at trial was insufficient to convict him of armed kidnaping in that it failed to show that the movement of the complainant was not merely incidental to the rape, and finally, (4) that the evidence presented at trial was insufficient to convict appellant of any of the charges in that it failed to establish that the appellant was accurately identified as the assailant. We affirm.

## I

The facts as presented by the government were as follows: The complainant left her home at approximately 6:00 p. m. on January 6, 1976, and walked to a nearby store. After making her purchases, she walked toward her home by way of Stanton Terrace. As she walked along Stanton Terrace she saw a man, later identified as the appellant, walking towards her. When he came closer, she looked at his face, which was illuminated by the street light, and realized that she had never seen him before. Appellant walked up to the complainant and said he wanted to speak with her. When she stepped aside to avoid him, he also stepped to the side and then put his arm around her neck and pushed her towards a nearby house which was approximately fifteen feet away. As she was being pushed she felt something sharp on her neck and felt a stinging sensation. Appellant paused at the door and asked the complainant to close her eyes which she did. She then heard him fumbling with something before she heard the sound of the key being inserted into a lock and turned. Appellant pushed her inside and told her not to scream.

Once inside the house she opened her eyes and although there were no lights on, she could see furniture in the living room and dining room. Appellant asked her whether she had any money and when she replied that she only had six dollars he said that was not enough and that he wanted more. He then pushed her through the living room and up the stairs to a bedroom on the

second floor. He forced her into the bedroom and told her to take off her clothes. She put her pocketbook and the items she had purchased in a crib which was in the same room and undressed. Appellant undressed and then forced the complainant to have sexual intercourse with him. During the next two and one-half hours he forced her to engage in repeated acts of intercourse and oral sex. Throughout this period he kept a hawkbilled knife just under the pillow. Although she did not actually see the knife in appellant's hand she observed it under the pillow when the appellant left the room for a moment. She was afraid to take the knife out of fear that the appellant, being stronger than she, would take it from her and kill her.

The complainant testified that while she was being assaulted she was able to discern the features of the appellant by the light of the street lamps shining through the windows in the bedroom and adjacent bathroom. The bedroom had three small windows at the head of the bed and one large window on the side. The bathroom, which was only ten feet from the bedroom, had one large window. After appellant had completed the sexual assaults he sat on the bed and told the complainant his problems and while he talked she observed his profile. At one point he lighted a cigarette for the complainant, momentarily illuminating the room.

When the complainant finished her cigarette, the appellant tied her up with belts and an extension cord, stuffed toilet paper in her mouth and tied her brassiere around her mouth and thereafter picked her up and placed her on the floor of the bedroom closet and closed the door. He immediately returned and asked her where the money was and she told him her pocketbook was in the crib. He closed the door again and turned on the bedroom light. He then turned the light off, returned to the closet and again asked the complainant where the money was. She repeated her earlier response to the same question and appellant shut the closet door and turned on the bedroom light. Finally, the bedroom light

was turned off and appellant opened the closet door and told the complainant not to make any noise that he was going to get a drink and some writing paper. She heard the appellant go down the stairs and then a loud noise as though he left the house. The complainant freed herself, wrapped a sweater around herself, listened to make sure that the appellant was not in the house and then ran down the stairs and into the street.

The complainant was met by a friend who walked her to her home. When she arrived at the home she put on a robe and told her sister's boyfriend and another man who was in the house what had happened, what the appellant had said about returning to the house and gave them the address of the house where the assault had taken place. She then called the police. Her sister's boyfriend and his friends set out to find the appellant and upon observing him leaving the house, grabbed him and pinned him to the ground. They were sitting on the appellant when the complainant arrived and identified him as her attacker. Moments later the police arrived and took custody of the appellant. When the complainant's mother asked the appellant why he would do "such a dirty filthy thing" to the complainant he replied "I don't know".

## II

Appellant contends that the trial court erred when it refused to enforce his subpoena of the complainant which would have required her to testify at the preliminary hearing.

The government called a police officer as its witness at the preliminary hearing. After the officer had testified, counsel for the appellant advised the court that he had subpoenaed the complainant and that she had been served. The government objected and argued that the appellant should make a proffer as to how the testimony would negate probable cause. The government also argued that the complainant should not be required to testify because the rape had been a harrowing experience and had left her emotionally upset. Counsel for the appellant proffered that his investigator had seen the complainant more recently and that she did not appear so unduly upset as to prevent her from testifying. The hearing was continued to allow the complainant to appear; however, at the next hearing the trial court ruled that he would not compel the complainant to testify, citing in support thereof this court's decision in *United States v. Davis*, D.C.App., 330 A.2d 751 (1975), and his conclusion that the appellant sought to call the complainant only for discovery purposes.

■ Appellant did not seek appellate review of the trial court's ruling until the filing of this appeal from his conviction. This being the case, we find that we need not address the merits of his contentions at this point since he has effectively waived the defect, if any, by his failure to promptly seek review of the trial court's ruling. See *Ross v. Sirica*, 127 U.S.App.D.C. 10, 13, 380 F.2d 557, 560 (1967); *Blue v. United States*, 119 U.S.App.D.C. 315, 321, 342 F.2d 894, 900 (1964), *cert. denied*, 380 U.S. 944, 85 S.Ct. 1029, 13 L.Ed.2d 964 (1965). Additionally, appellant has not alleged that he suffered any prejudice by the failure of the complainant to testify at the preliminary hearing.

## III

Appellant also contends that there was insufficient evidence to support his conviction of the robbery because there was no showing that a theft had been committed.

■ To support a charge of robbery, the government's proof must include evidence that the appellant took property from the complainant without a right to do so and with the specific intent to steal it. *See United States v. Owens*, D.C.App., 332 A.2d 752 (1975). In determining whether the evidence was such that a jury could reasonably have found that a theft had been committed beyond a reasonable doubt, we take into consideration the fact that the jury "may draw reasonable inferences and deductions from the evidence presented, if substantial". *Quarles v. United States*,

D.C.App., 308 A.2d 773, 775 (1973). The government is entitled to argue those inferences to a jury. *Whalen v. United States,* D.C.App., 379 A.2d 1152, 1165 (1977); *Tuckson v. United States,* D.C.App., 364 A.2d 138, 142 (1976). The government, to sustain a conviction,

> [N]eed only introduce enough evidence * * * that reasonable persons *could* find guilt beyond reasonable doubt. It is not a requirement that the evidence *compel,* but only that it is *capable* of or sufficient to persuade the jury to reach a verdict of guilt by the requisite standard. [*Crawford v. United States,* 126 U.S.App. D.C. 156, 158, 375 F.2d 332, 334 (1967).]

*See also United States v. Harris,* 140 U.S. App.D.C. 270, 284, 435 F.2d 74, 88 (1970), *cert. denied,* 402 U.S. 986, 91 S.Ct. 1675, 29 L.Ed.2d 152 (1971); *Curley v. United States,* 81 U.S.App.D.C. 389, 392, 160 F.2d 229, 232, *cert. denied,* 331 U.S. 837, 67 S.Ct. 1511, 91 L.Ed. 1850 (1947).

█ We conclude that the jury could find, taking into consideration the evidence and reasonable inferences therefrom, that the appellant had taken the complainant's property with the specific intent to steal it. Immediately upon entering the house the appellant asked the complainant how much money she had and when she replied six dollars he stated that that was not enough. This evidence demonstrated that the appellant wanted money from the complainant. After he had repeatedly assaulted her, he bound her and placed her in a closet. Up until that time the lights in the bedroom had been off. The appellant twice returned to the closet and asked the complainant where her money was and, each time after receiving her reply, he closed the closet door and turned on the bedroom lights. The jury could reasonably infer that the appellant was looking for the complainant's money. He returned to the closet a third time and told the complainant that he was going to get some writing paper and a drink and told her to be quiet after which he closed the door and left the house. The jury could reasonably infer from this evidence that the appellant, who obviously had been searching for the complainant's money, had found

it and was going to purchase some goods with the money. Finally, the complainant testified that the appellant "closed the closet door and got the money and left". This statement was not challenged on cross-examination and is direct evidence that a theft occurred. Based upon this evidence we are satisfied that the government has met its burden in showing theft as one of the essential elements of the charge of robbery.

The facts in this case are clearly distinguishable from those in *United States v. McGill,* 159 U.S.App.D.C. 337, 487 F.2d 1208 (1973) where the evidence demonstrated that the complainant had money at the time of the alleged robbery but failed to demonstrate that the money was ever taken from him.

### IV

Appellant's next contention is that his conviction for armed kidnaping cannot stand because the evidence fails to support a finding that the movement of the complaint was other than merely incidental to the commission of the rape.

The statute, D.C.Code 1973, § 22–2101, defines kidnaping as:

> [S]eizing, confining, inveigling, enticing, decoying, kidnaping, abducting, concealing, or carrying away any individual by any means whatsoever, and holding or detaining, or with the intent to hold or detain, such individual for ransom or reward or otherwise, . . .

█ The question as to whether the movement of the victim is merely incidental to the commission of another crime has recently been addressed by this court in *Sinclair v. United States,* D.C.App., 388 A.2d 1201 (1978), *Robinson v. United States,* D.C.App., 388 A.2d 1210 (1978), and *Pynes v. United States,* D.C.App., 385 A.2d 772 (1978). *See also United States v. Wolford,* 144 U.S.App.D.C. 1, 444 F.2d 876 (1971). We need not repeat that discussion here, except to note that a separate conviction for kidnaping can be sustained when the movement places the victim in greater dan-

ger or makes it more likely that the perpetrator will succeed in the underlying crime and will not be apprehended. As we have previously observed, "[I]t is settled that the ' "heart of the crime" of kidnapping is a seizure and detention against the will of the victim' ". *Pynes v. United States, supra,* at 773–74 (citation omitted). The fact that there may have been a subsequent robbery and rape does not negate the kidnaping. *Cf. Blango v. United States,* D.C.App., 373 A.2d 885, 888 (1977).

■ Here the appellant forced the complainant into the house at knife point and once inside asked her for money and upon her reply, that she had only six dollars, forced her upstairs where he repeatedly sexually assaulted her and then robbed her. The appellant committed the offense of kidnaping when he forced the complainant into the house; that is, once having forced her into the house, he could have released her without the commission of the rape and robbery and still been chargeable with kidnaping.

His actions in forcing her into the house for the purpose of rape or robbery obviously made it easier for him to commit those offenses since it made less likely the possibility of interference by passersby or neighbors. Additionally, the kidnaping subjected the complainant to greater danger in that it made her the easy victim of appellant's repeated sexual assaults. The facts here are distinguishable from those in *Robinson v. United States, supra,* where the seizure was merely incidental to the intended rape.

Last, we note, that the appellant not only held the complainant until he had robbed and raped her; rather, he continued to hold her by tying her and placing her in a closet to await his return. This evidence is more than sufficient to support his conviction for kidnaping.

## V

■ Appellant's final argument is that the evidence fails to establish that he was accurately identified as the assailant. This argument is based on his contention that the identification was unduly suggestive in that it took place while he was being held on the ground by the friends and neighbors of the complainant and further that the complainant never had a good look at her assailant.

The complainant testified that when she first observed the appellant on the street, she realized that she had never seen him before. She was also able to discern his features when he held her captive for about three hours in the bedroom. Other evidence corroborated the identification. While she never had been inside the house where the rape and robbery took place she was able to generally describe the inside, and articles of her clothing and other items belonging to her were found inside after the appellant was arrested. She gave her family and friends the address where the incident occurred and other evidence revealed that that was the address of the appellant's girlfriend and that he had access to that house. The appellant was seized just outside the house. An expert testified that the appellant's blood type was Group B and that only ten percent of the citizens of this country fall within that grouping. He also testified that the semen found on the complainant's clothing came from a person who was a secretor with Group B blood; the complainant is in Group O. Finally, when the complainant's mother asked the appellant why he would do "such a dirty, filthy thing" he replied "I don't know". All of these matters were properly submitted to the jury together with the standard instruction on identification, Criminal Jury Instructions for the District of Columbia, Standard Instruction 5.06 (2d ed. 1972). Having considered all of the evidence, together with appropriate instructions, the jury could find the identification of the appellant had been established beyond a reasonable doubt.

Appellant cites *Crawley v. United States,* D.C.App., 320 A.2d 309 (1974), in support of his argument, however, that case is distinguishable since the victim there had less than 90 seconds to observe the defendant while he was running away from him and the scene of the burglary.

It follows that the judgments of conviction appealed from should be affirmed.

*Affirmed.*