**Gerald LATTIMORE, Appellant,**

**William Lattimore, Appellant,**

**James Hunt, Appellant,**

**v.**

**UNITED STATES, Appellee.**

**Nos. 94–CF–169, 94–CF– 219 and 94–CF–222.**

District of Columbia Court of Appeals.

Argued Sept. 25, 1996.

Decided Oct. 24, 1996.

---

Robert S. Becker, Washington, DC, for appellant Gerald Lattimore, G. Godwin Oyewole, Washington, DC, for appellant William Lattimore, and Jon A. Frank, Silver Spring, MD and Richard J. Link, for appellant James Hunt.

Anne Pings, Assistant United States Attorney, with whom Eric H. Holder, Jr., United States Attorney, and John R. Fisher, Roy W. McLeese, III, and William E. Lawler, Assistant United States Attorneys, were on the brief, for appellee.

Before FERREN and REID, Associate Judges, and NEWMAN, Senior Judge.

NEWMAN, Senior Judge:

██  Gerald Lattimore was convicted, after a jury trial, of armed robbery and possession of a fire-arm during a crime of violence. William Lattimore and James Hunt were convicted by the same jury of armed robbery. On this appeal, they argue there was insufficient evidence to prove the elements of armed robbery and urge reversal.[1] We affirm.

## I.

On June 11, 1993, at approximately 9:55 p.m., Genaro Villegas and his sister-in-law, Alipia Sanchez, left the Rhode Island Avenue Metro station headed for his home. As they were walking by the bus area, four men accosted them. Gerald Lattimore struck Villegas, pointed a revolver into his side and demanded money. Hunt held Villegas while William Lattimore patted him down and fully searched him. William Lattimore pulled a wallet from Villegas' pocket, opened it, looked inside, and threw it back. Villegas opened the wallet and gave William Lattimore his payroll check of $431. William Lattimore took the check, looked at it, and threw it back at Villegas.

Angered that their victim had no money, Gerald Lattimore struck Villegas across the face and on the side of his face with the handle of his gun while Hunt continued to restrain him and William Lattimore further searched him. During the entire confrontation, a fourth suspect restrained Sanchez and

---

1. Gerald Lattimore and James Hunt also allege that the trial court erred in admitting testimony regarding a show-up identification made by the victim's sister-in-law, a witness to the incident, and thereby violated appellants' due process rights. Because this identification neither gives rise to a substantial likelihood of misidentifica-

tion, see Singletary v. United States, 383 A.2d 1064, 1068–69 (D.C.1978), nor was it unreliable, Turner v. United States, 622 A.2d 667, 672 n. 4 (D.C.1993) (citing Neil v. Biggers, 409 U.S. 188, 198–99, 93 S.Ct. 375, 381–82, 34 L.Ed.2d 401 (1972); In re B.E.W., 537 A.2d 206, 207 (D.C. 1988)), this argument is meritless.

prevented her from seeking help. This suspect was never apprehended.

Because of a recent string of robberies, Metro Transit Officer Paul Ludwig was stationed at the back of the parking lot, approximately sixty yards from the bus area. When he observed the confrontation between the bandits and the victims, Ludwig called for backup and rode his mountain bike to the scene. When Ludwig announced himself, the bandits turned and ran. Ludwig apprehended James Hunt approximately four yards from the scene. William Lattimore was apprehended on Bryant Street, approximately two and a half blocks from the scene and approximately three minutes after the robbery. Out of breath, William immediately remarked he was not the one with the gun. Gerald Lattimore was arrested a few minutes later further down on Bryant Street. No weapon was ever recovered.

At trial, Sanchez and Officer Ludwig each positively identified all three appellants as Villegas' assailants. Villegas, who suffered multiple injuries requiring stitches and a four-day hospitalization, testified as to the confrontation but could not identify any of the individual appellants or describe any distinguishing characteristics.

## II.

■ Appellants do not dispute the facts, but argue that they are legally insufficient to sustain their respective armed robbery convictions. Rather, they contend that the government failed to prove some of the elements of armed robbery, namely "taking," "asportation" or "carrying away," and "intent to steal." *See United States v. McGill,* 159 U.S.App. D.C. 337, 338, 487 F.2d 1208, 1209 (1973). Specifically, they allege that, because none of Villegas' property was in fact taken from the scene of the incident, nor possessed by appellants for a significant period of time, the evidence is only sufficient to support an attempted robbery charge or assault with intent to commit robbery.[2] *See* D.C.Code §§ 22–2902, –501 (1996 Repl.). We disagree.

■ To determine whether evidence is sufficient to sustain a conviction, we view the evidence in the light most favorable to the government, giving due deference to "'the jury's prerogative to weigh the evidence, determine the witnesses' credibility, and draw reasonable inferences from the evidence presented.'" *Hordge v. United States,* 545 A.2d 1249, 1253 (D.C.1988) (quoting *Payne v. United States,* 516 A.2d 484, 493 (D.C.1986)). The evidence need not compel a finding of guilt or negate every possible inference of innocence. *In re T.M.,* 577 A.2d 1149, 1151 (D.C.1990) (citations omitted). Thus, if a trier of fact could find the essential elements of the crime beyond a reasonable doubt, we must affirm the convictions. *See Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). Conversely, we must reverse "if 'there is no evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt.'" *Payne v. United States, supra,* 516 A.2d at 493 (quoting *Curley v. United States,* 81 U.S.App. D.C. 389, 392–93, 160 F.2d 229, 232–33, *cert. denied,* 331 U.S. 837, 67 S.Ct. 1511, 91 L.Ed. 1850 (1947)); *see also Brown v. United States,* 546 A.2d 390, 394 (D.C. 1988).

■ In the District of Columbia, robbery retains its common law elements. *Irby v. United States,* 250 F.Supp. 983, 987–88 (D.D.C.1965), *aff'd* 129 U.S.App. D.C. 17, 390 F.2d 432 (1967) (en banc). Thus the government must prove larceny and assault. *United States v. McGill, supra,* 159 U.S.App. D.C. at 338, 487 F.2d at 1209. To support a robbery conviction, the government must prove that there was "(1) a felonious taking, (2) accompanied by an asportation [or carrying away], of (3) personal property of value, (4) from the person of another or in his presence, (5) against his will, (6) by violence or by putting him in fear, (7) *animo furandi* [the intention to steal]." *Id.* (citing 2 WHARTON, CRIMINAL LAW AND PROCEDURE § 545 (12th ed.1957)); *see Criminal Jury Instructions for the District of Columbia,* § 4.46

---

2. Gerald Lattimore also contends that his conviction for possession of a firearm during a crime of violence should be voided because the evidence is insufficient to uphold the armed robbery convictions. However, because we determined that the evidence is sufficient to support appellants' armed robbery convictions, the possession conviction is also upheld.

(4th ed.1993); D.C.Code § 22–2901 (1996 Repl.). Additionally, to prove armed robbery, the government must establish that, at the time of the offense, the defendant was armed with a firearm. D.C.Code § 22–3202 (1996 Repl.).

Because robbery is comprised of larceny and assault, *see McGill, supra,* 159 U.S.App. D.C. at 338, 487 F.2d at 1209, we examine what constitutes a "taking" and "asportation" of property in larceny. It is not disputed that an assault against Villegas took place; therefore, if the evidence supports a taking, asportation, and the requisite intent, the evidence will sufficiently support appellants' armed robbery convictions.

■ An individual has committed larceny if that person "without right took and carried away property of another with the intent to permanently deprive the rightful owner thereof." *Durphy v. United States,* 235 A.2d 326, 327 (D.C.1967). It does not matter that the person possessed the property for only a brief amount of time or that the person was apprehended before removing the goods from the owner's premises. *McRae v. United States,* 222 A.2d 848, 849 (D.C.1966); *Groomes v. United States,* 155 A.2d 73, 75 (D.C.1959); *see Baldwin v. United States,* 521 A.2d 650, 650–51 (D.C.1987); *Singletary v. United States,* 519 A.2d 701, 701–02 (D.C. 1987).

In the present case the fact that the Lattimores and Hunt never kept any of Villegas' property does not purge their original taking and asportation of his property. *Groomes v. United States, supra,* 155 A.2d at 75–76 (taking and asportation were satisfied as appellant had acquired complete and exclusive control over two items that she had removed from a shelf, placed in her purse, and then after being observed returned both items). During the confrontation appellants acquired at gunpoint Villegas' wallet and paycheck

valued at $431. Both items were clearly within their complete and exclusive control as they had the opportunity to keep (or permanently remove from Villegas' person) the wallet and check if they so chose. Their complete and exclusive control is demonstrated as they physically held the items in their hands while restraining and threatening to shoot Villegas. Moreover, they retained their control over Villegas (and any of his property) by pistol-whipping Villegas after finding nothing of value on him. It is irrelevant whether they personally took the wallet and check out of his pocket or whether Villegas handed them both items[3] for a jury could properly find that Villegas was reacting to their threats and demands for money.

■ An individual may hold onto the property for only a brief amount of time and still commit a larceny. *McRae, supra,* 222 A.2d at 849 (fact that concealment of property by shoplifter was brief does not negate "taking" or "asportation"). *See also Baldwin, supra,* 521 A.2d at 650–51 (same). Here it does not matter that the appellants might have held the check and the wallet for only a brief amount of time before throwing both back at Villegas. A jury could properly find that they took the items with the intention of permanently depriving Villegas of his property. The fact that the property did not meet their needs or that they did not depart from the crime scene with any property does not absolve them of their original taking and asportation. In fact, "the slightest moving of an object from its original location may constitute an asportation." *Simmons v. United States,* 554 A.2d 1167, 1171 n. 9 (D.C.1989) (citing *e.g., Durphy, supra,* 235 A.2d at 327 and *Ray v. United States,* 229 A.2d 161, 162 (D.C.1967)) (concluding that a trier of fact could reasonably find asportation when the defendant removed the purse from the victim's shoulder, regardless of the fact that the defendant then fled with the purse in hand).[4]

---

**3.** In fact Villegas' testimony indicates William Lattimore took the wallet out of his pocket, opened it, and threw it back at Villegas who then handed Lattimore the check which Lattimore also threw back at Villegas.

**4.** *See also, e.g., Nelson v. State,* 528 N.E.2d 453, 455 (Ind.1988) (asportation proved where victim threw her purse at defendant after he dragged

her into the back seat of a car, defendant grabbed the purse and looked through it, but dropped it without removing anything); *People v. Quinn,* 77 Cal.App.2d 734, 176 P.2d 404, 405–06 (1947) (asportation proved where appellant never touched the wallet, which the victim removed from his pocket, at appellant's direction, and threw on the ground); *Johnson v. State,* 432

Because the government established that there was a taking and asportation in conjunction with proof of the appellants' intent to take Villegas' property, the government has sufficiently proven the crime of larceny. Combined with the assault in this case, the government also has established the elements of robbery. D.C.Code § 22–2901. Finally, because at the time of the robbery appellants were armed with a firearm, there is sufficient evidence to support their armed robbery convictions, D.C.Code § 22–3202; see, e.g., Ellis v. United States, 395 A.2d 404, 409–10 (D.C.1978), cert. denied, 442 U.S. 913, 99 S.Ct. 2830, 61 L.Ed.2d 280 (1979), as well as appellant Gerald Lattimore's conviction for possession of a firearm during a crime of violence. D.C.Code § 22–3204.

*Affirmed.*

So.2d 758, 758–59 (Fla.Dist.Ct.App.1983) (taking proved where victim took money from cash register, put it in a bag and placed the bag on the counter, although appellant never touched the bag); *People v. Smith*, 132 Ill.App.2d 657, 270 N.E.2d 136 (1971) (taking occurred when money placed on counter at appellant's directive, even though appellant never touched it); *People v. Alexander*, 17 Mich.App. 30, 169 N.W.2d 190, 191 (1969) (asportation may be accomplished by an innocent agent, i.e., the victim's act of putting the money in the bag under assailant's compulsion).