**Paul James HENDERSON, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 94–CF–1446.**

District of Columbia Court of Appeals.

Argued May 14, 1996.
Decided June 6, 1996.

Peter N. Mann, Ashton, MD, for appellant.

Mary B. McCord, Assistant United States Attorney, with whom Eric H. Holder, Jr., United States Attorney, and John R. Fisher, Thomas J. Tourish, Jr. and Lisa A. Prager, Assistant United States Attorneys, were on the brief, for appellee.

Before STEADMAN, SCHWELB, and KING, Associate Judges.

PER CURIAM:

Paul Henderson was convicted by a jury of first degree murder while armed, D.C.Code §§ 22–2401, –3202 (1989 & 1995 Supp.) (FDMWA) and several related offenses. He was sentenced on the FDMWA count to life imprisonment without possibility of parole in accordance with the provisions of D.C.Code § 22–2404.1(b) and (c) (1995 Supp.). The only issue meriting plenary discussion is whether the prosecution proved, beyond a reasonable doubt, the presence of aggravating factors warranting imposition of this sentence.

On December 7, 1994, the trial judge entered a written order which included her findings of fact with respect to the aggravating circumstances, as well as a brief analysis of the applicable law. A copy of the trial judge's order is attached to this opinion and made a part hereof. We are satisfied that the judge's findings are amply supported by the evidence, and we adopt the judge's statutory analysis. Accordingly, and substantially for the reasons stated by the judge, we conclude that the sentence was properly imposed.[1]

 Henderson was also convicted of second degree murder while armed (SDMWA). "When there is only one killing, the defendant may not be convicted of more than one murder." *Thacker v. United States,* 599 A.2d 52, 63 (D.C.1991). The conviction for SDMWA must therefore be vacated. In all other respects, the judgment is hereby

*Affirmed.*[2]

1. We note that the government proved two aggravating circumstances: (1) that the murder was especially heinous, atrocious, or cruel; and (2) that the victim was especially vulnerable because of age. Proof of either one of these circumstances is sufficient to satisfy the statute.

2. Henderson's motion to suppress identification was properly denied, for the identification procedures were not unduly suggestive. *See Greenwood v. United States,* 659 A.2d 825, 828 (D.C.), *cert. denied,* — U.S. ——, 116 S.Ct. 326, 133 L.Ed.2d 227 (1995). The identifications were also sufficiently reliable to make the extreme remedy of suppression altogether inappropriate. *See Neil v. Biggers,* 409 U.S. 188, 199–200, 93 S.Ct. 375, 382–83, 34 L.Ed.2d 401 (1972). Final-

ATTACHMENT

SUPERIOR COURT OF THE DISTRICT
OF COLUMBIA
CRIMINAL DIVISION

Felony Trial Branch

UNITED STATES

v.

PAUL JAMES HENDERSON,

Defendant

Crim. No. F–13174–93

Sentencing: 11/08/94

FINDINGS OF FACT PURSUANT
TO D.C. CODE 22–2404.1(b)–(c)

HEDGE, Judge.

This matter is before the court on the United States' Motion to Impose Life Imprisonment Without Parole, filed October 3, 1994, and the defendant's Opposition to Motion to Impose Life Sentence Without Parole, filed October 13, 1994. On November 8, 1994, the court orally granted the government's motion by sentencing the defendant to life without parole on the charge of First Degree Premeditated Murder While Armed.[1] In accordance with D.C.Code 22–2404.1(c), this memorandum sets forth findings which the court has found establish, beyond a reasonable doubt, two aggravating circumstances, each of which in its own right would be sufficient, to warrant the imposition of a sentence of life without parole in the above-referenced case.

The defendant was arrested and charged with First Degree Premeditated Murder

ly, Henderson admitted to several individuals that he was the person whom the identifying witnesses saw outside the victim's home, and his counsel acknowledged this both in his opening statement and in his closing argument.

Various inferences as to premeditation or the lack thereof could reasonably be drawn from the circumstances of the decedent's death. Viewing the record, as we must, in the light most favorable to the prosecution, we conclude that the evidence was sufficient to support the jury's finding that the murder of the decedent was premeditated. *See, e.g., Mills v. United States,* 599 A.2d 775, 780 (D.C.1991).

1. A Judgment and Commitment was entered on the record that day.

While Armed, First Degree Felony Murder While Armed, Second Degree Murder While Armed, and Burglary in the First Degree While Armed. At trial, the evidence established that the defendant, who was known as the nephew of one of the victim's former neighbors and as someone who did yard work in the neighborhood, was observed entering the victim's house during the time period that the death occurred. Shortly after the defendant left the house, several neighbors entered the victim's house and discovered her lying in a pool of blood on the floor in the front hallway. It was subsequently discovered that the victim's bedroom had been ransacked and several pieces of jewelry had been taken.

Examination of the victim revealed that she had been struck with a blunt object on the head and torso, that her windpipe had been severed by a knife wound to her neck, and that she was strangled, causing her death. The evidence also established that that evening, the defendant was given a ride to a nearby church by his cousin to whom he tried to sell a diamond ring. At the church, the defendant discarded the shirt that he had been wearing, which the cousin turned over to the police. Examination of the shirt yielded blood stains. Three individuals, including the defendant's cousin, also testified for the government that the defendant had told each of them that he had killed the deceased.

On September 1, 1994, the defendant was convicted of one count each of First Degree Premeditated Murder While Armed and Second Degree Murder While Armed, as the lesser included offense of Felony Murder While Armed.[2]

Prior to trial, the United States filed a "Notice of Intent to Seek Sentence of Life Imprisonment Without Parole," pursuant to D.C.Code § 22–2404(a) (Supp.1994).[3] In order to impose a sentence of life without parole, the court must conduct a "separate sentencing procedure ... as soon as practicable after the trial has been completed." D.C.Code § 22–2404.1(a) (Supp.1994). Under this procedure, the court is required to make a written finding as to whether any of the listed aggravating circumstances exists, beyond a reasonable doubt.[4] At the end of the trial, the court scheduled a sentencing hearing for October 20, 1994, and, in the meantime, ordered the United States to file a Memorandum in support of its motion seeking life without parole and the defendant to respond thereto. Upon notification that the Presentence Report would not be available in time for the October 20, 1994, hearing, the court rescheduled the hearing for November 8, 1994.

The United States requests that a sentence of life without parole be imposed due to the existence of two of the ten aggravating factors enumerated in D.C.Code § 22–2404.1(b). Specifically, the government contends that (1) the murder was especially heinous, atrocious, or cruel, and (2) the victim was especially vulnerable due to her age of

2. The defendant was acquitted of the charges of First Degree Felony Murder While Armed and First Degree Burglary While Armed.

3. The United States filed its Notice on May 27, 1994, which was well within the 30–day time limit prescribed by law. See D.C.Code § 22–2404(a) (Supp.1994).

4. Id. § 22–2404.1(b)–(c). The aggravating factors are as follows:
(1) The murder was committed in the course of kidnaping or abduction, or an attempt to kidnap or abduct;
(2) The murder was committed for hire;
(3) The murder was committed for the purpose of avoiding or preventing a lawful arrest or effecting an escape from custody;
(4) The murder was especially heinous, atrocious or cruel;

(5) The murder was a drive-by or random shooting;
(6) There was more than 1 offense of murder in the first degree arising out of 1 incident;
(7) The murder was committed because of the victim's race, color, religion, national origin or sexual orientation;
(8) The murder was committed while committing or attempting to commit a robbery, arson, rape, or sexual offense;
(9) The murder was committed because the victim was or had been a witness in any criminal investigation or judicial proceeding, or the victim was capable of providing or had provided assistance in any criminal investigation or judicial proceeding; or
(10) The murder victim was especially vulnerable due to age or a mental or physical infirmity. Id. § 22–2404.1(b)(1)–(10).

78 at the time of the murder. D.C.Code § 22–2404.1(b)(4), (10), respectively.

The defendant contends that, although the deceased was murdered, the crime does not come within the statute. Since no definition of "especially heinous" is given in the statute, the defendant suggests the court draw guidance from the federal statute which permits imposition of the death penalty for certain murders where "[t]he defendant committed the offense in an especially heinous, cruel or depraved manner in that it involved torture or serious physical abuse to the victim." 21 U.S.C. § 848(n)(12). The defendant contends that there is no evidence of torture or serious physical abuse to the victim in this case, that the statute's reach is reserved for cases involving such acts as dismemberment or disembowelment, and accordingly, the enhanced penalty should not apply.

The defendant also maintains that, although the victim was 78 years old at the time of her murder, she was in excellent physical condition and thus not "especially vulnerable," as called for by the statute. Furthermore, the defendant contends that there are mitigating factors which weigh against the imposition of life without parole. The defendant points out that his record includes only property crimes with no history of violent behavior. He also cites the United States' implication at trial that the murder was committed for the purpose of obtaining money to purchase crack, indicating that the defendant committed the murder because of a substance abuse problem.

The court finds that the record in this case establishes, beyond a reasonable doubt, the two aggravating factors relied upon by the government to warrant imposition of the enhanced penalty. First with respect to whether the murder was especially heinous, atrocious or cruel, the court finds the medical testimony conclusive. The evidence with respect to this established that the victim suf-

fered numerous bruises, abrasions, scrapes, and stab wounds to her back. The nature of the stab wounds, which were neither deep nor superficial, can lead to a reasonable inference that the victim was attempting to flee or otherwise avoid the attack. Further medical evidence established that, **while she was still alive**, the victim's throat was cut so deeply as to sever and expose the victim's windpipe. Finally, the evidence established the victim was strangled, which act resulted in her death.

The statute in question does not further define "especially heinous, atrocious or cruel." There are no threshold statutory judgments made as to the type of injuries inflicted, the manner in which they are inflicted, or the length of time the victim suffered before death which would be required before the statute is satisfied. In short, under either statutory provision (D.C.Code 22–2404.1 or 21 U.S.C. 848(n)(12)), torture or cruelty has no temporal limits. Thus, while it is true that perhaps there are other deaths that can inflict even greater torture, such as dismemberment or disembowelment, the inclusion of such atrocities does not preclude the statute's reach to lesser cruelties.

Whether the instant murder took five minutes or twenty, it was especially heinous, atrocious or cruel based upon the medical evidence.[5] As indicated, the victim was alive when stabbed and had her windpipe severed. The inference from the medical testimony was that she was conscious at the time. Only after this appeared to fail in bringing about her death was she strangled. Thus death came neither swiftly nor painlessly. It is an understatement to say the death in this case was a form of torture which was especially heinous, atrocious or cruel.

■ With respect to the second independent reason for imposing life without parole, specifically, that the victim was especially vulnerable due to her age, the court finds this factor to have been satisfied beyond a

---

5. The federal statute to which the defendant refers appears to focus by its terms on the method of death. The statute which the court must apply has no similar focus or limitation. Thus, the court could rely, in making the threshold determination as to whether aggravating circumstances exist, on the findings which the court made in concluding its discretion to impose the enhanced penalty should be applied, which is the second prong of the analysis. Nonetheless, the court is basing its finding that the murder falls within the parameters of Section 22–2404.1(b)(4) on the medical evidence, and therefore, the manner of death.

reasonable doubt. The fact that the victim was in excellent physical condition for a woman of 78 years of age is not dispositive. Regardless of how fit the victim was, time takes its toll. At the time of the incident, the defendant was a 37 year old man in good health [6] who could easily overcome the will of a 78–year–old woman. Indeed, the evidence suggests the defendant did easily overcome the will of the victim. It could be inferred from the evidence that the victim attempted to flee the attack (because of the nature of the stab wounds to the back). It can also be inferred that the victim's will was quickly overtaken since there was no apparent sign of meaningful struggle. Thus, given the manner of death, specifically that the fatal injuries were preceded by non-life threatening injuries, the victim's vulnerability due to age was critical; had it been an equal match physically, the victim would have had a "fighting chance."

█ Having found two aggravating circumstances to exist, the court may impose, but is not required to impose, a sentence of life without parole. Consideration of the defendant's background and the circumstances surrounding the crime, as well as the aggravating factors, becomes important in making this determination.

This crime involved a violation of trust and an extreme disregard for human life. As the defendant himself stated at the sentencing hearing, the victim had trusted him and had let him into her home of fifty years that afternoon. She had no reason to fear the defendant, and was thus more vulnerable to him.[7]

It can be inferred from the record, that the motive for the killing was so the defendant could avoid returning to jail. The testimony of Antonio Worrel was that the defendant confessed to killing the victim because she had seen his face. Thus, in order to avoid spending another day in jail, the defendant took the life of a person who had extended a

helping hand even when his family appeared to keep him at arms length.[8] These factors, combined with the existing aggravating circumstances, lead the court to conclude that a sentence of life without parole is the appropriate sanction in this case.

Accordingly, upon consideration of the sentencing memoranda filed by the parties, the presentence report, the arguments of counsel, and the record herein, the court, finds, beyond a reasonable doubt, that the murder was especially heinous, atrocious, or cruel. Alternatively, the court, finds beyond a reasonable doubt, that the victim was especially vulnerable due to age. The court, therefore, files this memorandum pursuant to D.C.Code § 22–2404.1(c) setting forth its findings for the imposition of a sentence of life without parole on the charge of First Degree Murder While Armed.

SO ORDERED.

---

6. Presentence Report, p. 11.

7. Although the defendant's criminal history bespeaks of crimes of theft, not of violence, such background does not excuse the offense here.

8. See Presentence Report, pp. 9–10.