**James D. PARKER, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 95–CF–211.**

District of Columbia Court of Appeals.

Argued Dec. 13, 1996.

Decided April 3, 1997.

David E. Jones, appointed by the court, for appellant.

Steve E. Rindner, Assistant United States Attorney, with whom Eric H. Holder, Jr., United States Attorney, and John R. Fisher, and Roy W. McLeese, III, Renate D. Staley, Assistant United States Attorneys, were on the brief, for appellee.

Before FERREN, STEADMAN, and RUIZ, Associate Judges.

RUIZ, Associate Judge:

A jury found appellant, James Parker, guilty as charged with first-degree murder while armed in violation of D.C.Code §§ 22–2401, –3202 (1996), felony murder while armed in violation of D.C.Code §§ 22–2401, –3202, kidnapping while armed in violation of D.C.Code §§ 22–2101, –3202 (1996), possession of a firearm during a crime of violence (PFCV) in violation of D.C.Code § 22–3204(b) (1996), and carrying a pistol without a license (CPWL) in violation of D.C.Code § 22–3204(a) (1996). The trial court sentenced Parker to life without parole for first-degree murder while armed, life without parole for felony murder while armed, fifteen years to life for kidnapping while armed, five to fifteen years for PFCV, and one year for CPWL, all sentences to run concurrently. Parker raises two issues on appeal: whether the trial court erred in (1) denying his motion for judgment of acquittal on the kidnapping charge because it merged with the murder charges, and (2) concluding beyond a reasonable doubt that the crime was "especially heinous, atrocious or cruel." We affirm.

## I.

A week prior to the murder of Deborah Beal, she had asked Parker to move out of her apartment and had broken off relations with him. On April 14, 1994, Beal was driving to her apartment complex on Wisconsin Avenue with a co-worker, Debbie Parsons. Beal recognized Parker's car waiting outside the apartment complex and instead of pulling into the garage, she kept driving along Wisconsin Avenue. Parker followed Beal and pulled alongside the car. Beal then attempted to gain access to her apartment's garage by using a key card. As Beal drove into the garage, Parker followed behind before the door closed. Parsons testified that while in the garage she asked Beal what to do, to which Beal responded that they should act as if everything was normal. After Parsons retrieved her belongings, she went into the laundry room and struck up a conversation with Ms. Wilma Anze, another tenant. Parsons and Anze heard Beal scream and went into the garage to see Parker pulling Beal toward his car as she attempted to pull her-

self away. Parker dragged Beal approximately twenty-five to thirty feet to his car. At this point, Beal's dress was ripped in the back and her hair was in disarray. Beal repeatedly asked Parker to let her go. Parsons testified that Parker forced Beal into his car and that Beal screamed out for someone to call the police. Parsons then ran off to call for help. Anze then heard gunshots and saw the windows break in Parker's car. After this happened, Anze ran away with her two children to call the police. Leaving Beal on the garage floor, Parker retrieved the garage door opener from Beal's car and drove to Maryland where his wife and their two children lived.

Officer Missouri was the first officer to arrive on the scene and found Beal in a great deal of pain on the garage floor. Beal indicated that she had been shot by her ex-boyfriend. At the hospital Beal spoke briefly with Detective Carew and told Carew Parker's name, age, and address where he could be found in Maryland. Uniformed Maryland officers were dispatched to Parker's Maryland address. Upon arrival at Parker's home, officers saw Parker exit the house and enter a vehicle. Parker proceeded to drive around the block, return to the house and run inside before turning off the motor. Parker called 911 and was connected with the officer outside the house. Parker repeatedly told the officer that "I've done something bad. I think I killed her." Parker surrendered without incident after a three-hour standoff. A search of the house, consented to by Parker's wife, turned up the gun used in the shooting. After waiving his Miranda[1] rights, Parker provided an oral statement admitting to the shooting. Three days later, Parker was transported to the District. Parker again waived his Miranda rights and admitted to the shooting.

At the hospital, Beal repeatedly asked whether she was going to die. She in fact did die the next day. The medical examiner testified that the decedent's causes of death were gunshot wounds, compressive injuries to the neck, and blunt force trauma to the head.

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct.

## II.

Parker argues that the kidnapping charge merges with the murder charges because the kidnapping was incidental to the underlying crime. Parker's merger analysis relies on the fact-based inquiry applied in *Robinson v. United States,* 388 A.2d 1210 (D.C.1978). *Robinson* stated that:

Although the conduct complained of in this case falls within the literal terms of D.C.Code 1973, § 22–2101, it is also obvious that some type of seizure, detention or confinement is an integral part of every rape. Consequently, we think it unlikely that Congress intended that every person who commits a rape be also charged and convicted of kidnaping, with its generally more severe penal consequences. The facts of each case must be examined to determine whether in fact two separate crimes were committed, or whether they merged.

In making this determination, we inquire whether the asportation (or seizure) in a given case was of the type incidental to every rape or whether the confinement and restraint were significant enough of themselves to warrant an independent prosecution for kidnaping. A like question is whether the 'kidnaping' substantially increased the risk of harm over and above that necessarily present in the underlying crime.

*Id.* at 1211–12 (citations omitted) (footnote omitted). In *Sinclair v. United States,* 388 A.2d 1201 (D.C.1978), we explained that where the facts underlying the charge of kidnapping are not "approximately coextensive or a necessary incident to the crime of robbery.... [T]he conviction ... for the separate offense of kidnapping was within the intent as well as the text of the applicable section of the Code." *Id.* at 1208. In *West v. United States,* 599 A.2d 788 (D.C.1991), we applied the reasoning in *Robinson* and *Sinclair* and upheld the trial court's refusal to merge a kidnapping conviction into rape and robbery convictions, because the seizure "both temporally and in kind was more than 'approximately coextensive' within the under-

1602, 16 L.Ed.2d 694 (1966).

lying incidents themselves ... [and] enhanced the likelihood of success in perpetrating the underlying crime." *Id.* at 793; *see Catlett v. United States,* 545 A.2d 1202, 1216 (D.C.1988) (upholding separate robbery and kidnapping convictions where the kidnapping element "exposed the victim to more danger and decreased the risk that appellants would be caught").

Parker argues that because Beal suffered life threatening injuries during the short time that he was dragging her to his car, the acts, including his movement of Beal, that support a charge of kidnapping, were incidental to the underlying murder. In addition, Parker contends that dragging Beal to his car did not diminish the chances that he would be caught, *West, supra,* 599 A.2d at 793, because the garage door opener was not in Parker's car. Therefore, the kidnapping conviction should merge into the murder conviction.

■ We decline to adopt Parker's merger analysis because it has been superseded by this court's opinion in *Byrd v. United States,* 598 A.2d 386 (D.C.1991) (en banc).[2] To ascertain legislative intent with respect to whether two offenses charged in a simple prosecution merge, *Byrd* adopted the *Blockburger*[3] rule of statutory construction that focuses on objective criteria, the statutory elements of the offenses charged, rather than the approach of *Robinson* and *Sinclair* of divining legislative intent based on the evidence adduced at a particular trial. As we stated in *Byrd:*

> [W]here the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision re-

quires proof of a fact which the other does not.

*Id.* at 389 (quoting *Blockburger, supra,* 284 U.S. at 304, 52 S.Ct. at 182).[4] As a rule of construction, *Blockburger's* presumptive rule that offenses do not merge if they require proof of different facts, can be overcome by " '*a clear indication of contrary legislative intent.*' " *Missouri v. Hunter,* 459 U.S. 359, 367–68, 103 S.Ct. 673, 678, 74 L.Ed.2d 535 (1983) (alteration in original) (quoting *Albernaz v. United States,* 450 U.S. 333, 340, 101 S.Ct. 1137, 1143, 67 L.Ed.2d 275 (1981)). The reasoning of *Robinson* and *Sinclair,* based on evidence presented at a particular trial does not suffice to overcome the presumption, applying the *Blockburger* analysis, that a charge of kidnapping does not merge into a charge of murder.

First-degree murder is a purposeful killing done with premeditated malice, D.C.Code § 22–2401, while kidnapping involves the "seizing, confining, inveigling, enticing, decoying, kidnapping, abducting, concealing, or carrying away any individual by any means whatsoever, and holding or detaining, or with the intent to hold or detain, such individual for ransom or reward or otherwise...." D.C.Code § 22–2101. Thus, because each charge requires proof of an element that the other does not, the convictions of kidnapping and murder do not merge. *See Whitaker v. United States,* 616 A.2d 843, 856 (D.C.1992) (kidnapping conviction did not merge with assault with intent to rape while armed, mayhem while armed, and assault with a deadly weapon since kidnapping required proof of asportation or confinement, while other convictions required some form of assault); *Monroe v. United States,* 600 A.2d 98, 99 (D.C.1991) (concluding that merger claims failed because armed robbery and kidnapping offenses each required proof of an ele-

**2.** In *West v. United States,* 599 A.2d 788, n. 10 (D.C.1991) the government did not contest the continued validity, post-*Byrd,* of *Robinson* and *Sinclair.*

**3.** *Blockburger v. United States,* 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).

**4.** In *United States v. Dixon,* 509 U.S. 688, 704, 113 S.Ct. 2849, 2860, 125 L.Ed.2d 556 (1993), the Supreme Court held that for purposes of

determining whether successive prosecutions are barred by the Double Jeopardy Clause, the proper inquiry is the *Blockburger* elements test, and not whether the same conduct was involved in both prosecutions, as *Grady v. Corbin,* 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990) previously instructed. Therefore, we are unpersuaded by Parker's argument that *Dixon* undermines our continued reliance on *Byrd* because *Dixon* overruled *Grady* on which *Byrd* relied.

ment that the other did not).[5]

**** Next, Parker challenges the imposition of a life sentence without parole under D.C.Code § 22–2404.1 on the ground that the terms "especially heinous, atrocious, or cruel," which authorize such sentence are unconstitutionally vague. In its written sentencing order, the trial court also determined, beyond a reasonable doubt, both that the murder was "especially heinous, atrocious or cruel" and that "[t]he murder was committed in the course of kidnapping Deborah Beal." The trial court's finding that the murder occurred in the course of a kidnapping is supported by the record, including the jury verdict. The trial court therefore, had authority to sentence Parker to life without parole under D.C.Code § 22–2404.1(b)(1), which expressly provides that a trial court may impose a sentence of life without parole if the "murder was committed in the course of kidnapping." *See Henderson v. United States*, 678 A.2d 20, 23 (D.C.1996) (finding that the trial court's imposition of life without parole was amply supported by the evidence). Because the trial court made sufficient findings setting out the specific factors upon which it relied in determining that Parker's conduct was "especially heinous, atrocious, or cruel," [6] we need not address Parker's contention that the language of D.C.Code § 22–2404.1(b)(4) ("The murder was especially heinous, atrocious, or cruel.") is unconstitutionally vague. *See In re A. B.*, 395 A.2d 59, 61 (D.C.1978) ("The Supreme Court has reminded us that

'vagueness challenges to statutes which do not involve First Amendment freedoms must be examined in the light of the facts of the case at hand.'") (quoting *United States v. Mazurie*, 419 U.S. 544, 550, 95 S.Ct. 710, 714, 42 L.Ed.2d 706 (1975)).

**** As part of this last argument Parker contends that D.C.Code § 22–2404.1 requires the trial court to conduct a separate sentencing procedure devoted solely to the issue of imposing a sentence of life imprisonment without parole.[7] Parker raises this issue for the first time on appeal and is entitled to relief only if he can demonstrate plain error. *Nelson v. United States*, 649 A.2d 301, 308 (D.C.1994) (citations omitted). Contrary to Parker's assertion, there is no indication that this "separate sentencing procedure" differs from the sentencing procedure, separate from trial, commonly conducted in Superior Court that took place in his case. At the sentencing hearing, Parker argued against the imposition of life without parole. He did not request additional time for further argument or a continuance to develop additional evidence. After conducting the sentencing hearing, the trial court issued a written order setting out the statutory basis and facts underlying its decision to impose life imprisonment without parole. The trial court's decision was based on the factors enumerated in D.C.Code § 22–2404.1, information in the court jacket, the testimony presented at trial, the jury's verdict, the presentence report along with the attached vic-

5. Any lingering question that the same conduct does not support two separate offenses is properly framed as a challenge to the sufficiency of the evidence to prove each of the elements of the offense beyond a reasonable doubt. There is no claim of insufficiency in this case.

6. The trial court's determination that the murder was "especially heinous, atrocious, or cruel" was based on the following findings of fact laid out in the trial court's written order which also incorporated by reference its oral findings made during the sentencing proceeding: Parker had repeatedly contacted or attempted to contact Beal after the April 9th breakup; on the day of the shooting, Parker waited for Beal to return to the apartment, and after Beal spotted Parker outside the apartment complex and tried to elude him, Parker then followed her, pulled up alongside of her car, and followed Beal into the garage. From this evidence the trial court determined

that Parker was stalking Beal, who was aware of the possibility of violence which awaited her. In addition, Parker dragged Beal to his car, shoved her inside and shot her multiple times. Parker then fled, leaving Beal to die. When taken to the hospital Beal was cognizant of her injuries and asked if she was going to die. The trial court found that Beal was in "excruciating pain, physical and mental." Lastly, the attack on Beal was unprovoked and Parker did not deny his role in the attack. These facts support the trial court's finding that this was an "especially heinous, atrocious, or cruel" murder. *See Rider v. United States*, 687 A.2d 1348 (D.C.1996).

7. D.C.Code § 22–2404.1(a) provides in part that "a separate sentencing procedure shall be conducted as soon as practicable after the trial has been completed to determine whether to impose a sentence of life imprisonment or life imprisonment without possibility of parole."

tim's impact statement, the memorandum of the United States in aid of sentencing, the arguments of counsel, and the remarks made by Parker.[8] We find no error, let alone plain error, in the procedure followed by the trial court.

We therefore affirm the judgment of the trial court.[9]

8. We find no merit in Parker's contention that incorporating a trial court's oral findings into its written order fails to satisfy the requirement for a writing of D.C.Code § 22–2404.1(c) ("The court shall state in writing whether, beyond a reasonable doubt, 1 or more of the aggravating circumstances exist."). In addition, the trial court's written order, independent of the incorporation, satisfies the statute. See note 6, *supra.*

9. We remand the case so that the trial court can vacate Parker's felony murder conviction because Parker cannot remain convicted of both felony murder and the underlying felony offense, *Catlett v. United States*, 545 A.2d 1202, 1219 (D.C.1988), nor of two murders where only one person has been killed. *Thacker v. United States*, 599 A.2d 52, 63 (D.C.1991).