Jeremiah R. LESTER, Appellant,

v.

UNITED STATES, Appellee.

No. 07–CF–1243.

District of Columbia Court of Appeals.

Argued Jan. 5, 2011.

Decided July 28, 2011.

Lee R. Goebes, Public Defender Service, with whom James Klein, Public Defender Service, was on the brief, for appellant.

Suzanne Clement Libby, Assistant United States Attorney, with whom Ronald C. Machen Jr., United States Attorney, and Roy W. McLeese III, Chrisellen Kolb, Thomas A. Gillice, and Ann K.H. Simon, Assistant United States Attorneys, were on the brief, for appellee.

Before FISHER, THOMPSON, and OBERLY, Associate Judges.

OBERLY, Associate Judge:

A jury convicted Jeremiah Lester of armed first-degree premeditated murder; armed first-degree felony murder; attempted armed robbery; three counts of possession of a firearm during a crime of violence ("PFCV"); and carrying a pistol without a license ("CPWL").[1] The convictions stemmed from the execution-style murder of Eric "Big E" Murray on April 2, 2002. On appeal, Lester argues that (1) the admission of a "Certificate of No Record" ("CNR") of a license to carry a pistol in the District of Columbia without the testimony of the clerk who signed the certificate violated Lester's rights under the Confrontation Clause; (2) the trial court abused its discretion by failing to grant his request to replace a juror who Lester alleged slept during portions of the defense's closing argument; and (3) some of his convictions should merge under the Double Jeopardy Clause of the Fifth Amendment. The government concedes that Lester's murder convictions and the PFCV convictions predicated on the murder merge. Accordingly, we remand for the trial court to vacate Lester's conviction for felony murder and the PFCV conviction predicated on that offense, but we affirm in all other respects.

1. D.C.Code §§ 22–2101, –4502 (2007 Supp.) (armed first-degree premeditated murder); §§ 22–2101, –4502 (2007 Supp.) (armed first-degree felony murder); §§ 22–2801, –4502 (2007 Supp.) (attempted armed robbery); § 22–4504(b) (2001) (PFCV); and § 22–4504(a) (2001) (CPWL).

## I. The Admission of the CNR Did Not Violate Lester's Rights Under the Confrontation Clause

■ At Lester's trial, the government introduced into evidence a certificate attesting that Lester did not have a license to carry a pistol in the District of Columbia on the date of the murder. The Metropolitan Police Department clerk who signed the CNR after entering Lester's information into the computer and finding no record of a license for Lester did not testify. MPD Detective Eduardo Voysest, the officer who requested the search for a license, did testify. Detective Voysest told the jury that he had provided the clerk with the necessary information about Lester, written on a three-by-five card. Detective Voysest waited while the clerk typed the information into the computer, and he personally saw the result of the computer search from where he was standing, which he testified was: "No record of license for Mr. Jeremiah Lester." He also testified that he was present when the clerk prepared the CNR form on a typewriter after running the search.

Lester argued at trial that the CNR should not be admitted into evidence because he was entitled, under *Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), to cross-examine "the person who actually does the search," so that he could "challenge whether or not that search was done or whether or not to call into question how that search was done." The trial court admitted the CNR over Lester's objection, reasoning that because the CNR was a business record that was self-authenticating, *Crawford* was not implicated, and because, "[i]n any event, in this particular case, you have a police detective who actually sat there and watched [the clerk] ... [g]o into the police record to uncover the fact that Mr. Lester has no

license to carry a pistol in the District of Columbia on the relevant dates."

As the government concedes, the trial court's reasoning that *Crawford* did not apply to admission of the CNR does not withstand our decision in *Tabaka v. District of Columbia*, 976 A.2d 173, 175–76 (D.C.2009) (holding that " 'a clerk's certificate attesting to the fact that the clerk had searched for a particular relevant record and failed to find it[ ]' ... was inadmissible over objection without corresponding testimony by the ... official who had performed the search" (quoting *Melendez–Diaz v. Massachusetts*, ─── U.S. ───, 129 S.Ct. 2527, 2539, 174 L.Ed.2d 314 (2009))). But we agree with the trial court's alternative reasoning that because Detective Voysest watched the clerk perform the search and could see the result of the search from where he was standing, there was no Confrontation Clause violation. In this case, the search for a license was truly a joint effort between Detective Voysest, who provided the information needed to perform the search, and the clerk, who entered the information into the computer. The clerk merely acted as Detective Voysest's typist, inputting the information that Detective Voysest provided. It would exalt form over substance to say that in this case Detective Voysest did not "perform" the search for the license within the meaning of *Tabaka*.

We are unpersuaded by Lester's arguments to the contrary. Lester argued at trial that had the clerk who signed the CNR testified, he might have challenged the clerk about whether the search was performed or how it was performed. These same questions could have been asked of Detective Voysest, who had the exact same knowledge as the clerk. On appeal Lester offers no additional questions that he might have asked the clerk, much less any questions that the clerk but

not Detective Voysest could have answered. We do not hold that in all circumstances the testimony of a watchful detective will provide an adequate substitute for testimony from the clerk who conducted the search and executed the certificate, but we are convinced that on the facts of this case there was no Confrontation Clause violation.[2]

## II. The Trial Court Did Not Err in Declining to Replace a Juror Who Allegedly Was Sleeping During Portions of Closing Argument

█ Just before the alternate jurors were dismissed, after both sides had rendered closing arguments and the trial court had instructed the jurors, one of Lester's attorneys told the court that Juror Number 13 "was sleeping quite a bit" during the defense's closing argument. The trial court stated that it had not observed Juror Number 13 sleeping, but suggested "maybe that was because [it] was focusing on [another juror]." Lester "ask[ed] that [Juror Number] 13 be stricken and" replaced with an alternate juror. The prosecutor, who did not notice Juror Number 13 sleeping, objected to the replacement. After the trial judge questioned the defense attorneys about the extent of the juror's alleged sleeping, and one replied that she had "noticed [the ju-

ror] dozing during the closings," the trial court declared: "I'm going to leave her on."

When Lester's appeal initially came before us, we were unable to discern the factual foundation for the trial court's decision to leave Juror Number 13 on the jury, and we remanded the record for the trial court to explore more thoroughly whether Juror Number 13's conduct substantially prejudiced Lester. In our remand order we suggested that, to the extent practicable, the trial court question Juror Number 13. The trial court held a hearing on May 13, 2011, at which Juror Number 13 and Lester's trial attorneys testified. Juror Number 13 testified that she recalled having served on the jury, hearing closing arguments, and being awake during closing arguments. She remembered that the government argued during its closing that the motive for the murder was taking over drug territory but did not remember the defense's answer to the government's argument. She also testified that she sometimes listens with her head held down and demonstrated how she did that for the trial court. Both of Lester's trial attorneys testified that they saw Juror Number 13's head bowed and eyes closed and believed that she was sleeping for, perhaps, "minutes" during the defense's closing, and

---

**2.** The Supreme Court's recent decision in *Bullcoming v. New Mexico,* —— U.S. ——, 131 S.Ct. 2705, 180 L.Ed.2d 610 (2011), that the Confrontation Clause was violated when the prosecution introduced "a forensic laboratory report containing a testimonial certification, made in order to prove a fact at a criminal trial, through the in-court testimony of an analyst who did not sign the certification or personally perform or *observe the performance of the test reported in the certification,*" is not to the contrary. 131 S.Ct. at 2713 (emphasis added). Providing the necessary fifth vote, Justice Sotomayor emphasized that "[i]t would be a different case if, for example, a supervisor who observed an analyst conduct-

ing a test testified about the results or a report about such results." *Id.* at 2722 (Sotomayor, J., concurring).

Moreover, the Court observed in *Bullcoming* that the "surrogate testimony of the kind [the witness who testified at Bullcoming's trial] was equipped to give could not convey what [the certifying analyst] knew or observed about the events his certification concerned, *i.e.,* the particular test and testing process he employed. Nor could such surrogate testimony expose any lapses or lies on the certifying analyst's part." *Id.* at 2715 (footnote omitted). In our case, by contrast, Detective Voysest could have addressed all of these issues.

one of the attorneys testified that she also observed Juror Number 13's eyes fluttering during the evidentiary portion of the trial.

After the hearing, the trial court submitted its Supplemental Findings of Fact and Conclusions of Law concerning Juror Number 13's conduct at the trial, finding that "there was no misconduct by Juror Number 13." The trial court specifically credited Juror Number 13's testimony, which was that she had not slept during closing arguments. The trial court speculated that defense counsel's belief that Juror Number 13 was sleeping during the trial "may have been based on the fact that Juror Number 13 listened to testimony with her head bowed down." The trial judge also noted his practice of watching jurors during a trial and stated that because he had not observed Juror Number 13 sleeping he had found insufficient evidence to support Lester's claim when it was first raised at trial.

■ "When a trial court receives a report of a sleeping juror, it has 'considerable discretion' in deciding how to respond." *Samad v. United States,* 812 A.2d 226, 230 (D.C.2002) (quoting *Golsun v. United States,* 592 A.2d 1054, 1057 (D.C.1991)). If the trial court's own observations are to the contrary, the court may " 'take judicial notice' " that the juror was not sleeping without further inquiry. *See Samad,* 812 A.2d at 230 (quoting *Golsun,* 592 A.2d at 1057 n. 3). "However, '[i]f . . . the court notices, or is [reliably] informed, that a juror is asleep during trial, the court has a responsibility to inquire and to take further action if necessary to rectify the situa-

tion. . . . The trial court should begin, for example, with a hearing to determine whether the juror had been asleep.' " *Samad,* 812 A.2d at 230 (quoting *Golsun,* 592 A.2d at 1057) (alterations in original).

■ Here, Lester's attorneys reported that Juror Number 13 had been sleeping during the defense's closing argument. The trial court did not conclusively state that it disbelieved defense counsel's observations or that it was taking judicial notice that Juror Number 13 had not slept before it decided against dismissing her. We remanded the record because without a specific finding by the trial court in support of its decision to leave Juror Number 13 on the jury, we were unable to review the trial court's decision under the abuse of discretion standard. On remand the trial court specifically stated that there was no misconduct by Juror Number 13, which was supported by Juror Number 13's credited testimony that she did not sleep during the closing arguments and by the trial court's own observations to the same effect. " '[A]ny factual finding anchored in credibility assessments derived from personal observations of the witnesses is beyond appellate reversal unless those factual findings are clearly erroneous.' " *Bean v. United States,* 17 A.3d 635, 638–39 (D.C. 2011) (quoting *Stroman v. United States,* 878 A.2d 1241, 1244 (D.C.2005)). We are satisfied that on remand the trial court sufficiently explored defense counsel's allegation that Juror Number 13 was sleeping,[3] and we will not disturb its finding that Juror Number 13 did not sleep during the trial. Because Juror Number 13 did not engage in misconduct, it was not an error, much less an abuse of discretion, to

---

**3.** We reject Lester's argument to the trial court, in his proposed findings of fact, that a remand hearing almost four years after the trial was an "inadequate substitute for a proper and timely exercise of discretion from this Court." Juror Number 13 recalled serving on

the jury, being alert, and the general issues in the trial. The fact that she did not remember particular details of the case does not mean that the passage of time between the trial and the remand hearing was too long for the trial court to find her a credible witness.

keep Juror Number 13 on the jury. *See Hinton v. United States,* 979 A.2d 663, 670 (D.C.2009) (en banc) (if a juror is not "shown nor found to be 'unable or disqualified to perform juror duties,'" "the [trial] court is without legal authority to replace a juror with an alternate during trial" (quoting Super. Ct.Crim. R. 24(c)(1))).

### III. Lester's Convictions for Armed First–Degree Premeditated Murder and Armed First–Degree Felony Murder, and the Associated PFCV Convictions, Merge

 Finally, the government agrees with Lester that his armed first-degree premeditated murder and armed first-degree felony murder convictions must merge under the Double Jeopardy Clause. "A defendant cannot remain convicted of premeditated murder and felony murder of the same decedent." *Green v. United States,* 718 A.2d 1042, 1063 (D.C.1998) (citing *Parker v. United States,* 692 A.2d 913, 918 n. 9 (D.C.1997)). Lester also argues that before his murder convictions are merged, his attempted armed robbery conviction should merge into his armed first-degree felony murder conviction. The government disagrees, proposing that because the trial court sentenced Lester to consecutive sentences for, *inter alia,* the armed first-degree premeditated murder charge and the attempted armed robbery charge and made Lester's sentence for the armed first-degree felony murder charge run concurrent to the other sentences, the felony murder conviction should be vacated, thereby allowing both the attempted armed robbery and armed first-degree premeditated murder convictions to stand.

We agree with the government's position. Vacating the felony murder conviction, not the premeditated murder *and* attempted armed robbery convictions, best effectuates the trial court's sentencing plan. *See Lane v. United States,* 737 A.2d 541, 544 n. 6 (D.C.1999) (Because "the trial court imposed identical concurrent sentences ... on each of the murder convictions, we vacate the conviction of felony murder while armed ..., leaving undisturbed the convictions of premeditated [first-degree] murder while armed ... and armed kidnapping."). *See also Baker v. United States,* 867 A.2d 988, 1010 (D.C. 2005) (where the government requested that the felony murder conviction be vacated, allowing the underlying burglary and first-degree premeditated murder convictions to stand, the trial court was ordered to vacate the felony murder conviction). And as the government concedes, the PFCV conviction predicated on the armed felony murder conviction must also be vacated. *See Morris v. United States,* 622 A.2d 1116, 1130 (D.C.1993) (where two of appellant's convictions "merge to become one crime of violence or dangerous crime, there can be only one associated offense of possession of a firearm during a crime of violence" (quotation marks omitted)).

Accordingly, we remand for the trial court to vacate Lester's convictions for felony murder and the associated PFCV. In all other aspects, the judgment of the trial court is affirmed.

*So ordered.*